## FRANCKLYN *v.* SPRAGUE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF RHODE ISLAND.

Argued December 3, 1886. — Decided April 11, 1887.

The decision of this court in *Hoyt* v. *Sprague,* and in *Francklyn* v. *Sprague,* 103 U. S. 613, so far as applicable to this case, is affirmed and adhered to.

On the organization of the A. & W. Sprague Manufacturing Company, and the conveyance to it of the assets of the old partnership, including the interests of minors conveyed under valid authority derived from the Legislature of Rhode Island, the property ceased to be partnership property; the partners ceased to be partners and became shareholders; their lien on the partnership property as partners ceased when their character as stockholders began; and those who claim through a stockholder cannot set up such lien.

A corporation, formed by and consisting of the members of a partnership, for the purpose of conducting the partnership business and taking the partnership property, takes the latter freed from partnership equities, all of which are settled and extinguished by the transfer.

While a person of unsound mind remains a minor, an ordinary guardian is all the custodian of either his person or estate that is necessary; and an act done by such guardian in relation to his estate, is as valid as if done by a committee appointed to take charge of him and his estate, as a person of unsound mind.

THIS was an appeal from a final decree of the Circuit Court dismissing a bill in equity. The case is stated in the opinion of the court.

*Mr. William Allen Butler* for appellants. *Mr. James McKeen* was with him on the brief.

*Mr. Benjamin F. Thurston* for appellees. *Mr. C. Frank Parkhurst* was with him on the brief.

Mr. Justice Bradley delivered the opinion of the court.

All the essential facts on which this case is based are the same as those involved in the cases of *Hoyt* v. *Sprague* and *Francklyn* v. *Sprague*, reported in 103 U. S. 613. The evidence used in those cases was imported into this by agreement of the parties, and only one new feature has been added. This is the mental incapacity of the present complainant, Edwin Hoyt, called Edwin Hoyt, Jr., in the former cases. The bill of complaint contains substantially the same statements as the bills in those cases, with the addition of an averment that the complainant, by certain proceedings had in the Supreme Court of New York in April, 1874, commonly called a commission of lunacy, was declared to be of unsound mind, incapable of taking care of himself or his property; that he had been in that condition during all his life; and that said Charles G. Francklyn and William S. Hoyt were appointed the committee of his person and estate. The principal facts out of which the litigation grew are stated in the report referred to; but it is proper to restate such of them here as may have a special bearing upon the questions growing out of the alleged incapacity of the complainant.

The brothers, Amasa and William Sprague the elder, were engaged as manufacturers in Rhode Island under the firm of A. & W. Sprague for many years prior to December, 1843, when Amasa Sprague died, leaving a widow, Fanny Sprague, two sons, Amasa and William the younger, and two or three daughters. William, the survivor, with the consent of his brother's widow, who became administratrix of his estate, continued the business under the same partnership name, for the joint benefit of himself and his brother's family, until October, 1856, when he died, leaving a widow, Mary Sprague, a son, Byron Sprague, and four grandchildren, being the children of a deceased daughter, Susan S. Hoyt, wife of Edwin Hoyt, of New York. This daughter had died in October,

1853, and her children were Sarah Hoyt, Susan S. Hoyt, born October, 1845, William S. Hoyt, born January 1, 1847, and Edwin Hoyt, the complainant, born July 16, 1849. Shortly prior to the death of William Sprague the elder, he had taken into the firm as partners with him, his son Byron, and his two nephews, Amasa and William Sprague the younger; so that at the death of William Sprague, in October, 1856, these young men were the surviving partners of the firm. By the enterprise of William Sprague, the property of the joint concern had greatly accumulated, being estimated at the time of his death at several millions of dollars. His widow, Mary, took out letters of administration on his estate; and, on the petition of her son-in-law, Edwin Hoyt, she was appointed guardian of the property and estate, in Rhode Island, of each of her grandchildren, who were the children of the said Edwin Hoyt, and all under fourteen years of age. This was done in February, 1857.

The parties then interested in the joint property of A. & W. Sprague were the two families of Amasa and William Sprague the elder in equal parts; that of the former being represented by Fanny Sprague, widow and administratrix, and her two sons Amasa and William (who had purchased the interest of their sisters); and that of the latter being represented by Mary Sprague, widow and administratrix, her son Byron, and her four grandchildren, the Hoyts, whose interests were represented by her as guardian of their property and estate. This made the property divisible into six equal shares: each widow being entitled to one-third of her husband's part, and the two sons of Amasa being each entitled to a third of his interest; Byron Sprague being entitled to one-third of his father's interest, and the Hoyt children being entitled to the remaining third. As the factories were in successful operation, and as a division of the property was deemed undesirable, all the parties concerned capable of exercising judgment, including Edwin Hoyt, the father of the four minors, were agreed upon the expediency of continuing the operation of the works as a joint concern for the benefit of all in proportion to their several interests, and it was so done, the factories and operations

being conducted by Amasa and William Sprague the younger and Byron Sprague. In 1862 Byron Sprague sold out his interest to his cousins Amasa and William for $600,000, which gave to each of the latter a share and a half of the entire six shares.

Soon after this, two charters were obtained from the legislature of Rhode Island, for the purpose of vesting the property of the concern in corporate bodies, one to be called the A. & W. Sprague Manufacturing Company, and the other the Quidnick Company.

In January, 1863, Mary Sprague, as guardian of the estate of her four minor grandchildren, together with their father, Edwin Hoyt, presented a petition to the legislature of Rhode Island, representing that they deemed it advisable and expedient that the interests of the said minors should be vested in such corporation or corporations as should be organized under and in accordance with the charters granted as aforesaid, and praying as follows:

"Wherefore your petitioners pray that whenever any corporation or corporations shall be organized under either or any of the charters aforesaid, and conveyance or conveyances shall become necessary to vest the title of the parties interested in any of said property in any such corporation or corporations, upon the execution by said Mary and Edwin as principals of every such bond or bonds in such penal sum or sums, and with such sureties, as the court of probate of Warwick shall require, conditioned for the investment of the amount of the full value of the interests hereinafter prayed to be conveyed in the capital stock of any such corporation or corporations to which such interests shall be conveyed as hereinafter prayed, in the names and for the use and benefit of said minors; and on the delivery of such bond or bonds to said court of probate, the said Mary in her capacity as guardian may make, execute, seal, acknowledge, stamp, and deliver all and any such conveyance and conveyances to any such corporation or corporations as shall be necessary to vest the title of the said minors in and to said property in any such corporation or corporations; and that any such conveyance or

conveyances so executed, acknowledged, stamped, and delivered shall be deemed and held as valid and effectual in law and equity to vest the title of said minors in any such corporation or corporations as though the same were executed, acknowledged, and delivered by said minors after attaining their majority; and as in duty bound will ever pray.

"MARY SPRAGUE, <em>Guardian.</em><br>
"EDWIN HOYT."

In pursuance of this petition, the legislature, on the 9th of March, 1863, passed a resolution, having the effect of a law, by which it was enacted as follows:

"Voted and Resolved, That the prayer of said petition be, and the same is hereby, granted; and the said Mary Sprague, in her capacity as guardian of the estate of Edwin Hoyt, Jr., Susan S. Hoyt, Sarah Hoyt, and Wm. S. Hoyt, is hereby authorized and fully empowered, whenever any corporation or corporations shall be organized under either or any of the charters heretofore granted by the General Assembly of this state, and conveyance or conveyances shall become necessary to vest the title of the parties interested in any of said property so held, owned, or managed by the firm of A. & W. Sprague in any such corporation or corporations, to make, execute, seal, acknowledge, stamp, and deliver all and any such conveyance and conveyances to any such corporation or corporations as shall be necessary to vest the right, title, and interest of the said minors in and to said property, or any portion thereof, in any such corporation or corporations; and 'that any such conveyance or conveyances so executed, acknowledged, stamped, and delivered shall be deemed and held as valid and effectual in law and in equity to vest the title of said minors in any such corporation or corporations as though the same were executed, acknowledged, stamped, and delivered by said minors after attaining their majority: <em>Provided,</em> That before the delivery of any such conveyance or conveyances the said Mary shall have executed and delivered to the court of probate of Warwick every such bond or bonds with herself in her said capacity and said Edwin Hoyt as principals,

in such penal sum or sums and with such sureties as said probate court shall require conditioned for the investment of the amount of the full value of the interests of said minors which she shall then be about to convey in the capital stock of any such corporation or corporations to which the same shall be conveyed in the names and for the use and benefit of said minors."

This legislative act was adjudged by this court, in the cases of *Hoyt* and *Francklyn* v. *Sprague*, before mentioned, to be valid and effective to authorize Mary Sprague as guardian of the estate of the four minors, to convey their interests in the A. & W. Sprague property to the corporations named.

The terms of the act were duly complied with, and by an agreement executed on the 1st of April, 1865, by and between all the parties interested in the property, in their various capacities, including Edwin Hoyt, as father of the four minor children, and Mary Sprague, as the guardian of their estate, and as administratrix of her husband's estate, referees were appointed to appraise the entire property and to report the amount of each one's interest therein, with a view to adjust the several shares of capital stock in the corporations to be formed to which each would be entitled. This duty was performed by the referees, who brought the accounts down to the 31st day of March, 1865, and reported that on that day the cash value of the whole property and assets, exclusive of the Quidnick Company property, (which was appraised by itself in consequence of outside parties having some interest therein,) was $6,732,906.69, and that the liabilities amounted to $2,871,921.79, leaving the net value of the estate equal to $3,860,984.90. The different interests in this amount they reported to be as follows:

Mary Sprague's individual interest . . . . . . $624,984 69
Fanny Sprague's interest . . . . . . . . . . 625,511 69
William Sprague's interest . . . . . . . . . 978,867 42
Amasa Sprague's interest . . . . . . . . . . 978,867 42
Mary Sprague, guardian of children of Susan Hoyt   652,753 68

They then stated the result of the individual accounts of the several parties with the firm, showing what each was indebted thereto, and what was due to each; and, in this connection, the sum of $188,333.33 was credited as due from the firm to Mary Sprague, guardian of the heirs of Susan Hoyt, to equalize the amounts drawn out of the firm by the two Rhode Island families for their family expenses.

The stock of the A. & W. Sprague Manufacturing Company was awarded by the referees to the various parties according to the value of their respective interests in the property independently of the amounts due from or to them respectively, which last amounts remained as debts due to or from the company. When the property was conveyed to the corporation, as hereinafter mentioned, it was stipulated as an express condition, that the corporation was to assume all the liabilities of the firm of A. & W. Sprague. There being found due to Mary Sprague, as administratrix, for a dividend previously made by the firm, the sum of $164,250.26, she elected to take stock for that, instead of the liability of the company; which increased the total amount of the stock to the sum of $4,025,235.16. This being divided into 10,000 shares, made each share equal in value to $402.52, and gave to Mary Sprague, as guardian of her grandchildren, including their portion of the shares allotted to her as administratrix, 1751 shares, or 439 shares each.

The Quidnick property was valued at $776,065, and divided into 5000 shares, of which 489 shares were allotted to Mary Sprague as guardian of her grandchildren, including their portion of the shares allotted to her as administratrix, being 122 shares to each.

The precise interests of the parties having thus been ascertained, in August, 1865, Mary Sprague, as guardian of the Hoyt children, applied to the probate court of Warwick (the proper jurisdiction) for an order to authorize her, in pursuance of the act of assembly, to convey to the respective corporations the interest of her wards in the properties of the firm of A. & W. Sprague, and of the Quidnick Company, in exchange for the shares to which they were entitled by the report of the

referees.' On the 5th of August, 1865, an order was made accordingly; and on the 9th of August, 1865, an instrument was executed by all the parties, including Mary Sprague, as guardian of the Hoyt children, by which, after reciting the powers given to her by the act of assembly and the order of the probate court, they conveyed and transferred to the A. & W. Sprague Manufacturing Company all their respective right, title and interest in the entire property of A. & W. Sprague, except the Quidnick property, including all the right, title and interest of said minors, with the following stipulation, to wit: "It being expressly understood that this conveyance is made upon condition that the grantees are to assume the liabilities of said firm of A. & W. Sprague, in accordance with said agreement of reference hereinbefore referred to."

A similar deed of conveyance was made to the Quidnick Company (corporation) for the Quidnick property and assets.

Thereupon, after adjusting the fractional shares, each party was credited, on the stock ledgers of the respective companies with the shares to which they were severally entitled, the Hoyt children being each credited with 439 shares of the A. & W. Sprague Manufacturing Company, and 122 shares of the Quidnick Company.

In June, 1866, Mary Sprague, as guardian of her said grandchildren, presented to the probate court a petition for the appointment of appraisers, to appraise the property of her wards in her hands, in order that she might return an inventory thereof. Appraisers were accordingly appointed, and performed the duty required of them, and presented inventories and appraisements of each ward's estate, which were sworn to by Mary Sprague, and filed, and approved by the court on the 13th of August, 1866. That of Edwin Hoyt, Jr., with which the others substantially corresponded, was as follows, to wit:

| | |
|---|---:|
| 124 shares National Bank of Commerce, $51 . . | $6,324 00 |
| 1 U. S. 6 per cent. bond . . . . . : . . . . | 108 50 |
| 2 N. Y., Prov. & Boston R. R. bonds, $950 . . | 1,900 00 |
| 439 shares A. & W. Sprague M'f'g Co. stock, 402$^{525}$, | 176,707 82 |
| 122 shares Quidnick Co. stock . . . . . . . | 18,935 98 |
| Cash . . . . . . . . . . . . . . . | 387 44 |
| | $204,363 74 |
| Dividend due from A. & W. Sprague, as cash, | |
| March 31, 1865, with interest from that date . | 47,083 34 |
| | $251,447 08 |

Mary Sprague, in her answer, states that the bank stock and bonds had been purchased by her, before the organization of the corporations, with moneys drawn by her from time to time, as guardian, from the firm of A. & W. Sprague. The dividend of $47,083.34, "due from A. & W. Sprague, as cash, March 31, 1865," was one-fourth of the sum of $188,333.33 allowed to the Hoyt children, as before stated.

At the same time, Mary Sprague presented her account, as guardian, with each of her wards, based on the appraisement, notice of such presentation having been duly published in pursuance of a previous order; and the accounts were severally allowed on the same 13th of August, 1866.

After these proceedings were had, Mary Hoyt resigned her guardianship, which resignation was accepted by the court; and on the application of Edwin Hoyt, the father, stating that it was the desire of his three younger children, Susan S. Hoyt, William S. Hoyt, and Edwin Hoyt, Jr., that William Sprague should be appointed guardian of their estate in Rhode Island, (Sarah having become of age,) the appointment was made as requested, and William Sprague, as guardian of the estate of the three younger children, on the 1st of September, 1866, gave the requisite bonds, and filed an inventory in each case, the same as had been presented and filed by Mary Sprague, with the addition of a further dividend made by the corporations on the 1st of September, less amounts paid for the benefit of the wards respectively. The account in the case of

Edwin Hoyt, Jr., the complainant in this case, duly verified by appraisers and by the oath of William Sprague, guardian, was as follows, to wit:

| | | |
|---|---:|---:|
| 124 shares National Bank of Commerce, $51 | | $6,324 00 |
| 1 U. S. 6 per cent. bond . . . . . . . . . | | 108 50 |
| 2 N. Y., Prov. & Boston R. R. bonds, 950 | | 1,900 00 |
| 439 shares A. & W. Sprague M'f'g Co., $402^{5275}$ | | $176,707 82 |
| 122 shares Quidnick Co., $155^{213}$ . . . . . . . | | 18,935 98 |
| Dividend due from A. & W. Sprague, as cash, March 31, 1865 . . . . . . . . . . . | | 47,083 34 |
| Dividends due from A. & W. Sprague M'f'g Co., cash, Sept. 1, 1866 . . | 6585 00 | |
| Less payments by above company . | 2979 60 | |
| | | 3,605 40 |
| Dividends due from Quidnick Co. as cash, Sept. 1, 1866 . . . . . . . . . . . . . . . | | 1,220 00 |
| No real estate | | |
| | | $255,885 04 |

At this time Edwin Hoyt, Jr., the now complainant, was seventeen years of age, Susan, nearly twenty-one, and William S., nineteen.

The record shows various accounts rendered to Susan and William after they became of age, and various amounts paid them. Whether any further sums were advanced on Edwin's account beyond the $2979.60 charged in the inventory, does not appear. He lived with his father in New York, who was a member of the firm of Hoyt, Sprague & Co., a firm intimately connected with the Rhode Island companies, and may have had no occasion for advances on account of his interest.

In the fall of 1873 the A. & W. Sprague Manufacturing Company became embarrassed and suspended payment, and on the 1st of November, 1873, the said company, together with Amasa and William Sprague, and the said Fanny and Mary Sprague, made an assignment to Zachariah Chafee, of all the property, real and personal, of said company and of the said parties individually, and of the firm of A. & W.

Sprague, (excepting shares of capital stock in any corporation,) in trust for the benefit of such creditors as should accept, in payment of their debts, the notes of the company payable in three years from January 1, 1874, with interest. Subsequently, on the 6th of April, 1874, a further assignment was made by said A. & W. Sprague, and the A. & W. Sprague Manufacturing Company to said Chafee, of all of said property, in trust, first, for the benefit of such creditors as should come in and take said notes in payment of their debts; and, secondly, the residue for the benefit of all other creditors of said parties.

In December, 1873, Susan S. Hoyt, who came of age in October, 1866, and who afterwards married Charles G. Francklyn, received from her guardian, William Sprague, the stocks and bonds mentioned in his inventory of her estate before referred to (except the shares in the A. & W. Sprague Manufacturing Company, which were probably deemed worthless); and William S. Hoyt received the stocks and bonds mentioned in the like inventory of his estate. It is also to be inferred from the pleadings and evidence that Edwin Hoyt, Jr., the complainant, at the same time, received the stocks and bonds mentioned in the like inventory of his estate. The bill admits that William Sprague, the guardian, delivered to the complainant (Edwin Hoyt, Jr.) "123 shares in the Quidnick Company and certain other shares of stock," to which he informed the said Francklyn and William S. Hoyt the said Edwin was entitled. It also appears that, on the 9th of December, 1873, Edwin Hoyt, Jr., by an instrument executed by him, sold and assigned his Quidnick Company stock (122 shares) to said Charles G. Francklyn for the sum of $34,000; and on the same day executed a power of attorney to his father, Edwin Hoyt, to transfer the same. Both of these instruments were acknowledged by said Edwin Hoyt, Jr., before a commissioner for the State of Rhode Island in the city of New York. A week previously to this, namely, on the 1st of December, 1873, William S. Hoyt went to Providence to get the various stocks transferred by the guardian to the parties for whom they were held, but, not finding him there, wrote him the following letter, to wit:

"PROVIDENCE, Dec. 1, 1873.

"Hon. WILLIAM SPRAGUE:

"DEAR SIR: I come here to get you to transfer to the respective owners the Quidnick and bank stock which you hold as guardian for my sister, brother, and me, but, as you are absent, I leave with Mr. Greene the power appointing me attorney for my brother and sister, and enclose power appointing Mr. Greene attorney to make the necessary transfer, which please execute, and send to him by return mail.

"Yours truly,                W. S. HOYT."

From these statements and proofs it is not only fairly to be inferred that the complainant actually received the bonds and stocks held for him by his guardian, William Sprague, but that his father and the said Charles G. Francklyn and William S. Hoyt, his brother-in-law and brother, who now appear as his committee in this suit, dealt with him as a person capable of transacting business as late as December, 1873.

Indeed, in view of the decision of this court in the cases of *Hoyt* v. *Sprague* and *Francklyn* v. *Sprague*, 103 U. S. 613, the appellant, by his said committee, does not claim, before this court, anything but his one-fourth part of the sum of $188,333.33, which was allowed to the Hoyt children by way of compensation for the amounts drawn out of the concern by the Rhode Island families for their family expenses. The contention is, (and that is the matter now presented for consideration,) that this sum was never converted into the stock of the corporation, but remained a lien on the partnership property, and followed it as such in the hands of the corporation with priority over all other claims against it, except the debts of the firm then due and owing. Can this proposition be maintained? There is no doubt that in 1865, before the property of A. & W. Sprague was conveyed to the corporation, Mary Sprague, as administratrix of her husband's estate, had a lien on the partnership property (subject to the debts then due) for the whole amount of her interest therein; and it was then in her power, had she thought fit, to have demanded a settlement and distribution of the partnership property according to the

several equities of the parties concerned, including the just share of herself and her wards, and, in that share, and as a part of it, the said sum of $188,333.33. But she deemed it more for their advantage (as well as her own) that the property should be kept together, and vested in the corporations proposed to be formed; and in this view she was supported by the opinion and advice of Edwin Hoyt, father of the minors. The act of the legislature of March 9, 1863, gave her power to convey all the right, title, and interest of the said minors in and to the property, to the respective corporations. And this she did. By her conveyance, and that of the other interested parties, the entire property and assets of the partnership were conveyed to, and vested in the corporations, those of A. & W. Sprague, in the A. & W. Sprague Manufacturing Company, and those of the Quidnick Company in the Quidnick corporation, subject, however, to the debts and liabilities of every kind and description. The debts and liabilities of the firm of A. & W. Sprague thereupon became the debts and liabilities of the A. & W. Sprague Manufacturing Company. The property ceased to be partnership property and became consolidated in a unity of interest in the corporation. The partners ceased to be partners, and became holders of shares in the capital stock of the company. Their lien as partners ceased when their character of stockholders began. The mutual accounts showed that various sums were due to the several partners from the firm, or from them to the firm. They might have adjusted these individual balances by stock, adding an equivalent in stock to those who had balances of credit, and deducting an equivalent of stock from those whose balances were against them. But they preferred that these balances should stand as debits and credits against or in favor of the corporation when organized, and they were all disposed of in that way, except one item due to Mary Sprague, as administratrix, for a dividend formerly made by the firm, as before stated. This she preferred to take in stock, and the others consented to it; and she afterwards allotted to her wards their proper share of it. The sum of $188,333.33 which had been credited to Mary Sprague as guardian of her grandchildren, to equalize the

sums drawn out by the other parties for family expenses, she preferred to stand as a debt of the corporation, as it had been a debt of the firm. It was so arranged. The corporation, by the terms of the transfer of all the property, succeeded to and assumed all the debts and liabilities of the firm, — this amongst the rest. This liability was treated exactly like all others, whether due to the partners or to strangers. It was treated as a debt.

Now, can it be justly contended that these debts due to the several partners, when they became the assumed debts of the corporation, continued to be liens on the property, as they had been when it was partnership property? We think not. This would have been subversive of the whole plan. The relation of the parties to the property was entirely changed. Their lien as partners, as well as their character of partners was extinguished. A conveyance or release of property by one who has a lien on it necessarily extinguishes the lien. Mary Sprague, as administratrix and guardian, after conveying to the corporation all her interest and the interest of her wards in the property, parted with all right in it, and accepted in lieu of it shares for her aliquot part in the body of it, and the assumption and engagement of the corporation to pay the balance due to her on the accounts. Having conveyed and parted with the property by virtue of an authority conferred by law, her lien upon it was gone; and those who claim through and under her cannot set up any such lien.

It cannot be said that she sacrificed the interests of her wards by retaining the claim as a debt instead of taking stock for it, as she might have done; because a debt always has priority over capital stock, and is a more favored claim in the law.

The argument that the corporation, being the creature of the partners, was not a *bona fide* purchaser, and must be considered as having taken the property subject to all partnership equities against it, is not a sound one. The constitution of the corporation and the transfer to it of the property, were authorized by law, and were intended to settle and extinguish these equities, and to place the concern on a new footing; and the

very parties entitled to equities were the ones who organized the corporation, and made the conveyance to it. Besides, it is not the corporation alone which is concerned in the transfer, but the creditors who trusted it after it was formed. They, or at least the great mass of them, certainly stand in the position of *bona fide* claimants against its property and assets. They may not be able to claim any precedency over the former partners having debts due to them, but they stand on an equal footing with them.

With these views as to the effect of the conveyance of the interest of the Hoyt children to the A. & W. Sprague Manufacturing Company, the proceedings taken in 1874 by C. G. Francklyn and Wm. S. Hoyt, to have the complainant in this case declared to be of unsound mind from his birth, cannot have any effect to change the conclusion which we reached in the former cases. Whether he was of unsound mind or not, Mary Sprague was the lawful guardian of his property and estate in Rhode Island from the time of her first appointment in 1857, when he was seven years old, and continued such, with all the rights and powers of a guardian until she resigned that charge in 1866; and the act of the legislature was just as efficacious in relation to his estate as it was in relation to that of the other children. As long as he was a minor an ordinary guardian was all the custodian of either his person or estate that was required. It was only after he became of age, and the power and functions of the guardian ceased, that a committee to take charge of his person and estate was needed.

In Shelford on Lunacy it is said: "It seems, that a commission of lunacy may issue against an infant; but as the court of chancery has power over infant wards of court and their estates, such a proceeding seems unnecessary during the minority of the ward, except under particular circumstances when the more ample powers given in lunacy may be required for managing their estates." In Stock on Non Compos Mentis, it is also said, that, "Infancy is not a ground for withholding [a commission of lunacy], except in so far as it renders such a proceeding unnecessary, by subjecting the infant to another protective power of the Chancellor." Both writers refer to

Halse's case cited in argument in *Ex parte Southcot,* 2 Ves. Sen. 401, 403. In the present case, no word of the complainant's imbecility was ever heard until after the insolvency of the company; and, even if it had appeared, whilst he was a minor, that he was of unsound mind, the legislative act gave full power to the guardian to dispose of his estate, in the manner she did, and removed all objections on that score.

The decree of the Circuit Court is, therefore;

*Affirmed.*

MR. JUSTICE BLATCHFORD did not sit in this case, or take any part in its decision.