### ROE v. LAHAYE. *
### No. 9395.

Circuit Court of Appeals, Eighth Circuit.
April 22, 1933.

*Rehearing denied July 10, 1933.

E. D. & F. A. Crites, of Chadron, Neb., for appellant.

Merwin O. Johnson, of Rushville, Neb., and G. A. Farman, Jr., of Ainsworth, Neb., for appellee.

Before STONE and KENYON, Circuit Judges, and REEVES, District Judge.

REEVES, District Judge.

The appellant was plaintiff in the trial court, and will be so designated in this opinion. Plaintiff sued the defendant in two counts for the sum of $2,500. The first count was the common-law action for money had and received, and the second a variation of the first by alleging details of the transaction.

At the close of all the evidence the trial court directed a verdict for the defendant, and the plaintiff has duly appealed.

On the 31st of December, 1929, one James C. Motz, a defendant, but not served with process, was secretary, treasurer, and general manager of the bankrupt, and on that date gave to the defendant, Ira Lahaye, a check of the bankrupt for $2,500; such check was given without the express authority of the board of directors. It was the final act of a series of transactions as follows:

The defendant and the said James C. Motz, as partners, acquired a lumber yard and a grain elevator at the town of Clinton, Sheridan county, Neb. Such acquisition was from another partnership, and involved, among other things, the giving of notes payable in the aggregate sum of $7,900. These were partnership obligations, and were unpaid at the time of the dissolution of the partnership formed between Motz and the defendant. Such dissolution was fixed as of February 26, 1929. The firm name was then "The Clinton Grain Company."

In working out the dissolution a corporation was formed about April 1, 1929, under the name of "The Clinton Grain, Lumber & Fuel Company," but the defendant, Lahaye, was not one of the incorporators. The title to the assets of the partnership remained in the partnership firm name until the two partners, on May 10, 1929, executed a bill of sale to the corporation. By this instrument the corporation did not assume the liabilities of the partnership. However, by an agreement among the parties, the corporation did assume the debts of the partnership save only the above-mentioned obligations aggregating $7,900. The assets transferred to the corporation were appraised at approximately $40,000. Both of the partners owed the firm on open accounts. These were deducted, and, after charging off admittedly worthless accounts, it left a net surplus in the new corporation, including capital, of $23,155.28. The obligations for $7,900 were not considered in determining net surplus. The corporation paid the net surplus as thus computed to the partners. Since they owned the property in equal parts, each partner was entitled to $11,577.64. It was understood that upon the payment of the foregoing sum the partners would discharge their own obligations aggregating $7,900.

Motz intended to continue with the corporation as a large stockholder and active officer, and received one-half the capital stock, par value $10,000, and the balance in cash in the sum of $1,577.64. The full sum of $11,577.64 was paid to Lahaye. The funds employed in these payments had been raised for the most part by the sale of stock of the corporation.

Concurrently with these transactions Motz and the defendant, Lahaye, undertook to adjust their partnership affairs and particularly the matter of the notes for $7,900. Motz was unable to pay his part, but turned over to Lahaye his check for $1,577.64. Lahaye paid the major portion of said obligations, and then it was agreed between Motz and himself that Motz would give his note to Lahaye for the balance of his portion of said joint obligations. To secure this note to the defendant Lahaye, Motz gave as collateral security all his stock in the corporation. Apparently, by this transaction, the defendant Lahaye undertook to assume and discharge the partnership indebtedness not expressly assumed by the corporation. The testimony, and the inference to be drawn therefrom, as well as the nature of the transaction, point to this intention. Lahaye had not paid a residue of such partnership debt, and on December 31, 1929, obtained from Motz, who was then secretary, treasurer, and general manager of the corporation, a check of the corporation for $2,500 payable to Lahaye. He then delivered to Motz his note and the collateral security.

Thereafter the corporation was adjudicated a bankrupt, and the trustee instituted a suit for the recovery of said sum upon the ground that it was without consideration, and that the said Motz was without authority to

issue said check. The defendant claims that the check was issued with the knowledge and consent of the officers of the corporation for the purpose of discharging a debt assumed by the corporation.

The trial judge, while finding the facts as herein stated, was of the opinion that the corporation was bound to discharge all partnership debts.

Other facts as they may become pertinent will be stated in the course of this opinion.

■ 1. The fact that the corporation was organized for the purpose of carrying on the firm business would not necessarily make it liable for the firm indebtedness. The evidence was conclusive that the partnership was entirely solvent at the time of the sale to the corporation. The transfer was made in good faith and extinguished all partnership equities. Francklyn v. Sprague, 121 U. S. 215, 7 S. Ct. 951, 30 L. Ed. 936; 47 C. J. § 427, p. 930.

The general rule is "that the corporation is not liable on or for the contracts or debts of the pre-existing partnership or other association unless it has expressly or impliedly and on a sufficient consideration adopted or assumed the same." 14 C. J. § 368, p. 305.

In this case the corporation did not expressly or impliedly assume the partnership obligations in respect of the notes for $7,900 but, on the contrary, the evidence was clear and convincing that the partners were to liquidate these debts. Their acts not only confirmed this arrangement but in a measure would estop them from asserting otherwise. This is true for the reason that said notes were not listed among the liabilities expressly assumed by the corporation, and for the fur-

ther reason that the corporation paid the net surplus to the partners with the express understanding that they would pay the notes for $7,900.

2. It should be noted that the claim asserted by Lahaye against the corporation was not upon the theory of subrogation to the rights of creditors of the partnership. In fact, the note held by him and paid with a corporate check was admittedly a personal obligation of Motz given in final adjustment of the partnership affairs.

■■ 3. Neither can it be successfully maintained that the check was given with the knowledge and the consent of the officers of the corporation. Even if so, it was without consideration. Motz, as the secretary, treasurer, and general manager of the corporation, could only act within the scope of his authority either express or implied. In neither one of these important relationships would he have the authority to pay out the funds of the corporation to discharge his own debts. Clearly this would not be within the scope of his authority. The fact that the books and records of the corporation showed the disbursement, and that no complaint had been made by the board of directors, would not be an approval or ratification of an improper act. Particularly is this true when it did not appear that the disbursement was called to the attention of the board.

■ It is obvious from the foregoing that the check was improperly drawn upon the funds of the corporation, and, according to the testimony, the defendant knew this.

The trial judge should have directed a verdict for the plaintiff. The judgment, therefore, must be reversed. It is so ordered.