435 So.2d 797 (1983)
W.A. SWANN, Jr., Etc., Petitioner,
v.
A.O. MITCHELL, et al., Respondents.
No. 61809.
Supreme Court of Florida.
July 14, 1983.
*798 W.A. Swann, Jr., in pro. per.
Robert D. Bell and Raymon J. Hahn of Fisher, Bell, Hahn, Winn & Schuster, Pensacola, for respondents.
ADKINS, Justice.
We review the opinion of the First District Court of Appeal in Swann v. Mitchell, 408 So.2d 681 (Fla. 1st DCA 1982), which directly conflicts with Obel v. Henshaw, 130 So.2d 892 (Fla. 3d DCA 1961), and Wiese v. Wiese, 107 So.2d 208 (Fla. 2d DCA 1958), on the same point of law. Art. V, § 3(b)(3), Fla. Const. (1972).
This case involves a partnership accounting. The respondents (defendants below), the Mitchells, own and operate an automobile dealership located in Pensacola and known as Mitchell Motors. The business was incorporated in approximately 1940 and operated as a corporation until October 1, 1954, at which time the entity converted to a partnership. The petitioner's deceased father, William Alfred Swann, Sr., served as business manager of Mitchell Motors from 1940 until 1967. In 1966 Swann entered into a partnership agreement with the Mitchells which provided that Swann would receive a five percent share of the profits and losses of the partnership. The agreement also provided that upon the death of Swann the partnership would pay Swann's personal representative Swann's share in the undistributed profits of the partnership up to the date of Swann's death.
In 1967, Swann retired as business manager of Mitchell Motors. On June 30, 1979, the Mitchells dissolved the partnership, without notifying or consulting Swann, and transferred all the assets of the partnership to a corporation. Seventy-five percent of the capital stock of the corporation was issued to the former Mitchell partners and twenty-five percent to the son of one of the Mitchell partners. The business essentially continued to operate as before. Swann was not notified of the conversion of the business to corporate form until early 1980 at which time he received a final payment from the business intended to represent his percentage of the profits of the partnership to the date of dissolution.
Swann then instituted this action for wrongful dissolution of the partnership and sought to be paid for a portion of the capital surplus, the value of the goodwill, the stock of the corporate successor to the partnership, and accounting and damages for wrongful dissolution. The trial court granted summary judgment for the Mitchells. The district court, finding that there were unresolved issues precluding judgment, reversed and remanded. The district court opinion stated:
Whether or not the parties by other agreements or conduct manifested an intention that any increment in partnership assets should not be subject to Swann's *799 profit share, or indeed, whether there were any such assets over and above the capital contributions of the partners, are matters that await determination by the trial court after receiving evidence.
408 So.2d at 683. We agree with this portion of the opinion. However, the district court also went on to conclude that the goodwill of the business should not be considered in determining the extent of Swann's unpaid partnership interest. It is this portion of the opinion which appears to be in direct conflict with the previous decisions of our district courts of appeal in Obel v. Henshaw, 130 So.2d 892 (Fla. 3d DCA 1961), and Wiese v. Wiese, 107 So.2d 208 (Fla. 2d DCA 1958), and therefore the issue to be determined by this Court.
Paragraph 3(c) of the partnership agreement sets forth the rights of W.A. Swann as follows:
Upon the death of W.A. Swann the partnership shall .. . pay his personal representative the share of W.A. Swann in the undistributed profits of the partnership up to the date of death.
The language of the partnership agreement between Swann and the Mitchells clearly appears to limit Swann's rights to his share in the undistributed profits of the partnership upon Swann's death. The district court agreed with the petitioner's (Swann's) contention that nothing in the partnership agreement indicated an intention to alter the accepted definition of "profit." The court, citing this Court's opinion in Uhrig v. Redding, 150 Fla. 480, 8 So.2d 4, 6 (1942), defined the accepted definition of profits to include the increment in the value of the capital assets. We agree with the district court's conclusion that nothing in the Uniform Partnership Act alters this definition of profit and therefore, it is proper to include the increment in the value of capital assets in determining profits in this case.
The goodwill of a business may be defined as the advantage or benefit the business has beyond the mere value of its property and capital. 8 Fla. Jur.2d Business Relationships § 493 (1978). Goodwill is usually evidenced by general public patronage and is reflected in the increase in profits beyond those that may be expected from the mere use of capital. Courts in other jurisdictions have defined goodwill as such. Agricultural Services Association v. Ferry-Morse Seed Co., 551 F.2d 1057 (6th Cir.1977); Freeling v. Wood, 361 P.2d 1061 (Okl. 1961); Buck v. Mueller, 221 Or. 271, 351 P.2d 61 (1960); In re Estate of Glant, 57 Wash.2d 309, 356 P.2d 707 (1960); Copland v. Wisconsin Department of Taxation, 16 Wis.2d 543, 114 N.W.2d 858 (1962). Accordingly, goodwill should be recognized as an asset of a business, in the absence of a contract to the contrary, and taken into consideration in any sale or valuation of assets.
Courts have frequently recognized goodwill as an asset subject to consideration on an accounting between partners where its disposition is not controlled by the partnership articles and the dissolution was not caused by the wrongful act of one of the partners. Smith v. Bull, 50 Cal.2d 294, 325 P.2d 463 (1958); Barron v. Koenig, 80 Idaho 28, 324 P.2d 388 (1958); Adams v. Adams, 156 Neb. 540, 57 N.W.2d 131 (1953); Young v. Cooper, 30 Tenn. App. 55, 203 S.W.2d 376 (1947). It also appears to be a well established view in other jurisdictions to recognize goodwill as an accountable asset when the value of that goodwill survives the death of one of the partners. Didlake v. Roden Grocery Co., 160 Ala. 484, 49 So. 384 (1909); Rosenberg v. J.C. Penney Co., 30 Cal. App.2d 609, 86 P.2d 696 (Cal.Dist.Ct. App. 1939); Succession of Conway, 215 La. 819, 41 So.2d 729 (1949).
In Obel v. Henshaw, a suit to dissolve a partnership, our Third District Court of Appeal specifically held that the goodwill of the partnership should be recognized as an asset of the partnership and taken into consideration in any sale of assets which may be ordered. The decision cited with approval the case of Wiese v. Wiese, a Second District Court of Appeal decision which stated:
"As might be expected, the assets of a partnership may include many types of property, or property rights: real property, *800 personal property, good will, patent rights, franchises and many others." Upon further proceedings in this cause the good will, if any, of the partnership should be recognized as an asset of the partnership and taken into consideration in any sale of assets which may be ordered.
130 So.2d at 894.
Where some or all of the partners retain possession of any of the assets after dissolution of the partnership, whether their purpose is to use those assets to continue the business in another form or otherwise, they should be required to account to the partnership for the value of those assets at the time of dissolution. Section 620.66(1), Florida Statutes (1981), states:
Every partner must account to the partnership for any benefit, and hold as trustee for it any profits, derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.
The partnership laws of this state also forbid any number less than all of the partners in a partnership to dispose of the goodwill of the business. § 620.60(3)(b), Fla. Stat. (1981).
It is unclear to us whether the district court in this cause did in fact consider goodwill to be an asset. They did state that goodwill is "a valuable commodity." We have established that it is an asset. The district court's decision to deny consideration of goodwill in determining Swann's unpaid partnership interest appears to be based on four factors. First, the court concluded that the value of goodwill would be "virtually impossible of determination without an actual sale of the ongoing business" and that no "sale" as such had occurred. 408 So.2d at 683. The court stated that a "sale" had not occurred because the partners remaining after Swann's retirement continued the business for twelve years and then transferred the assets to a corporation. We cannot agree with the district court's conclusion that the absence of an actual sale makes the value of the asset goodwill impossible of determination.
Upon dissolution of a partnership, the general rule is that it is the right of each partner to have the partnership property converted into money by sale. But, where a sale would be prejudicial to an innocent partner or where circumstances exist which would render distribution in kind, or another method of disposition, to be more favorable to the interests of the parties, such a distribution is permissible and desired. 68 C.J.S. Partnership § 388 (1950). An illustration of just such an appropriate situation existed in Wiese. In Wiese, two partners agreed to go into a boat repair and maintenance business together. The defendants were to furnish suitable land and the plaintiff-partner was to share in the labor and management of the business. One of the issues before the court was whether the chancellor had properly valued the improvements made to the defendants' land. The court noted that it was impossible or impracticable to sell improvements apart from the soil. 107 So.2d at 213. Similarly, the goodwill of a law firm has been held to be an improper subject of a sale, for ethical reasons, yet subject to evaluation as a valuable asset of the firm for other purposes. Geffen v. Moss, 53 Cal. App.3d 215, 125 Cal. Rptr. 687 (1975); Stern v. Stern, 66 N.J. 340, 331 A.2d 257 (1975). The goodwill of a professional practice has been held to be community property subject to division in a marriage dissolution proceeding. Re Marriage of Lukens, 16 Wash. App. 481, 558 P.2d 279 (1976). It has also been found to be property for which corporate stock could be issued. Eastern Oklahoma Television Co. v. Ameco, Inc., 437 F.2d 138 (10th Cir.1971); Brown v. Weeks, 195 Mich. 27, 161 N.W. 945 (1917).
In these types of situations and other situations where an actual sale of partnership property does not occur, there are methods available to use to determine the value of the goodwill. Two methods have often been used to calculate the value of goodwill; the capitalization of earnings method and the method of subtracting the *801 value of tangible assets of a business from the sale price of that business. Under the capitalization of earnings method, the goodwill is evaluated by determining the average annual net earnings of the business, determining the value of the business and tangible assets, deducting from the total net earnings those earnings attributable to the tangible property and then capitalizing the balance. Copland v. Wisconsin Department of Taxation, 114 N.W.2d at 865-66; 10 Mertens, Law of Federal Income Taxation § 59.30, at 79-80 (Zimet rev. 1958). Not all aspects of goodwill as a whole are reflected by the use of these formulas. These formulas would not necessarily be reflective of the goodwill which is personal to some particular individual. Elements of goodwill attributable to the personality, skill, or business acumen of the person disposing of a business, for instance, may be evaluated by comparing the profit margin of similar businesses where no such unusual personal elements of goodwill exist to obtain a value for the portion of the goodwill attributable to such personal factors.
We do not attempt to value the goodwill of Mitchell Motors in this case. That determination is properly left to the trial court after receiving the evidence. We merely give a brief discussion of these methods to demonstrate that it is possible to value goodwill in the absence of an actual sale. Likewise, we feel the increment in the value of the goodwill from conception of the partnership agreement up until the time of the dissolution is not impossible to determine.
The determination of whether there was or was not a sale is not necessary to the disposition of this case. We will not surmise as to what the district court meant by "actual sale," but we do note that the Mitchells did use a standard form Bill of Sale to accomplish the transfer of their partnership interest to the corporation. In addition, they arrived at a corporate value of $400,000, and issued corporate stock upon that selling price. There is also evidence that the transfer does not qualify as a tax free exchange under the Internal Revenue laws. In Francklyn v. Sprague, 121 U.S. 215, 7 S.Ct. 951, 30 L.Ed. 936 (1887), the United States Supreme Court noted that the dissolution of a commercial partnership ensues from a sale of all or practically all of the property and effects of the firm used in carrying on its business. They stated that the transfer by a partnership of all its assets to a corporation formed to take them over, and the issuance of corporate stock to the partners for a portion of the assets, with the expectation that the remainder shall be collected and applied in satisfaction of partnership debts, has also been adjudged sufficient to constitute a dissolution of the firm. The facts in this case seem to be more indicative of a sale than a gratuitous transfer. Irrespective of what label we place on the disposition of the assets here, we have determined that the dissolution of this partnership is an event suitable for reaching a value in the increment of the assets, including goodwill.
The other three factors the district court based its holding on were its findings that: 1) The remaining partners clearly reserved the right, under the partnership agreement, to modify, amend or change the agreement; 2) The partnership was not to exist for any fixed period of time; and 3) Swann's interest was limited to profits only. We do not find any merit in the reasoning that these aspects of the agreement preclude a finding that the partnership goodwill is subject to a claim by Swann.
Accordingly, the decision of the district court is quashed in part and the cause remanded with instructions to remand same to the trial court for further proceedings consistent with this opinion.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON and EHRLICH, JJ., concur.
McDONALD, J., dissents with an opinion.
McDONALD, Justice, dissenting.
I dissent. The trial judge was correct in granting no relief to Swann. Swann's interest in the partnership was restricted to 5% of the operating profits. He had no *802 claim on any of the assets of the partnership, including good will.
The interpretation of "profits" as set forth in the district court's opinion is proper in the usual sense, but the agreement of these parties dispels any claim of Swann to the increment in value to the partnership assets. He was to be paid, and was paid, 5% of the operating profits until the partnership was terminable. The agreement was terminable at will; Swann was paid all due him.
I would quash the opinion of the district court and affirm the judgment of the trial judge.