UNIVERSITY CENTER, INC., *v.*
ANN ARBOR PUBLIC SCHOOLS

1. GUARDIAN AND WARD—STATUTES—ORDER APPOINTING GUARDIAN.
    The purpose and legal effect of a guardian is determined by statute and the order appointing guardians is conclusive upon the existence of the statutory grounds (MCLA § 703.1).

2. GUARDIAN AND WARD—LETTERS OF GUARDIANSHIP—SCHOOL PURPOSES.
    Recitation in letters of guardianship that the appointment is as "guardian of the person and for school purposes only" does not create a kind of hybrid guardianship, having less impact upon the status of the ward than usually contemplated under statute (MCLA § 703.1).

REFERENCES FOR POINTS IN HEADNOTES
[1] 39 Am Jur 2d, Guardian and Ward § 51 *et seq.*
[2] 39 Am Jur 2d, Guardian and Ward § 24 *et seq.*
[3-6] 47 Am Jur, Schools § 151 *et seq.*

3. COURTS—PROBATE COURT—GUARDIAN AND WARD—GUARDIAN FOR
SPECIAL PURPOSE.

The probate court is a court of statutory powers and jurisdiction
and that court could not, even if it were so stated in an order,
create a guardianship of the person of a minor ward which
was limited to some special purpose.

4. SCHOOLS AND SCHOOL DISTRICTS—SCHOOL BOARD—PROBATE PRO-
CEEDINGS—MINOR CHILDREN—PARTIES.

A school board is not a proper party to probate proceedings, as
it has no justiciable interest in such proceedings; like all other
municipal and governmental entities it may be affected by
probate or circuit court determinations made in contemplation
of the welfare of minor children.

5. SCHOOLS AND SCHOOL DISTRICTS—SCHOOL BOARDS—GUARDIAN AND
WARD—ADOPTION—CUSTODY OF CHILDREN.

School boards have no more right to object to the appointment
of a resident as guardian of a minor ward than they would
have to object to an adoption by a resident, or to a custody
award to a resident divorce litigant; in all such cases, school
population may be increased without the knowledge or consent
of the board.

6. SCHOOLS AND SCHOOL DISTRICTS—SCHOOL BOARD—SCHOOL POPULA-
TION—CHILD PLACEMENT—PROBATE COURT.

A school board has no vested interest in the size of the school
population as the interest of society in the placement of a
child is fully represented and protected by the probate court.

Appeal from Court of Appeals, Division 2, T. M.
Burns, P. J., and Quinn and Roberts, JJ., reversing
and remanding Washtenaw, Ross W. Campbell, J.
Submitted September 15, 1971. (No. 41 June Term
1971, Docket No. 52,989.) Decided November 9,
1971.

25 Mich App 529 affirmed.

Complaint for mandamus by University Center,
Inc., and by the guardian of several minor plaintiffs
against the Ann Arbor Public Schools to direct de-

fendant to register the minor plaintiffs in its public schools. Writ denied. Plaintiffs appealed to the Court of Appeals. Reversed and remanded for issuance of writ. Defendant appeals. Affirmed.

*Crippen, Dever & Urquhart,* for plaintiffs.

*Roscoe O. Bonisteel* and *Roscoe O. Bonisteel, Jr.,* for defendant.

T. E. BRENNAN, J. The background of this case is well stated in the opinion of the trial judge.

"Action for mandamus brought by University Center, Inc., a private corporation, against the Ann Arbor Public Schools, to direct the defendant to register certain minors in the public schools of the Ann Arbor School District, and for a restraining order directed toward the same end. The minors are all patients at the University Center, Inc., and were added as parties plaintiff, subsequent to commencement of suit, with Arnold Kambly, M.D., the president of the corporate plaintiff, appointed their next friend for such purpose.

"University Center, Inc., formerly The Readjustment Center, Inc., is a corporation for profit formed under Act 327 of P.A. 1931, as amended. Its corporate purposes, as set forth in Article II of its Articles of Incorporation, are: 'To operate a private psychiatric hospital; to carry on psychiatric research.' The testimony at trial showed that the corporation provides residential psychiatric treatment for adolescent males between the ages of 13 and 18 years of age who have learning problems. These patients are not retarded, neurotic, nor psychotic, and their intelligence quotients are above 110. They are, however, educational underachievers who for psychological reasons do not perform ordinary school work with success.

"By and large, the patients come from homes of upper middle class status, and their parents possess adequate living facilities for them at the parents' place of residence. In some, and perhaps most, of the cases there are emotional problems in the parental home between the patient and one or both of his parents, or between the parents, which make his home stressful for the patient and which may cause or aggravate his learning difficulties. At the University Center, Inc., the patients are housed in an institutional-type building, separate from Dr. Kambly's own personal residence. A charge of from $350 to $500 per month is made for each patient, plus his expenses, plus Dr. Kambly's professional charges for psychiatric treatment.

"Dr. Kambly files each year with the Washtenaw County Probate Court a petition executed by each patient asking that Dr. Kambly be appointed guardian of his person 'and for school purposes,' the patient's parents customarily sign a waiver of notice of hearing on the petition and consent to such appointment, and Dr. Kambly is, thereafter, so appointed. For the past 15 years the Ann Arbor Public Schools have permitted patients at the University Center, Inc., to attend the public schools of Ann Arbor School District without payment of tuition.

"The attendance of these patients in the Ann Arbor Public Schools has for some time, however, been a matter of concern to the defendant. They frequently are disturbed youths with special problems whch have a 'ripple effect' on other students and on teachers and which require a disproportionate amount of attention by specialized school personnel. On August 11, 1969, prior to registration for the current school semester and year, the defendant wrote Dr. Kambly informing him that the policy of pupil admission in the Ann Arbor Public Schools had been recently reviewed intensively and revised, that in the opinion of the Ann Arbor Public

School's attorney boys enrolled in the Readjustment Center (University Center, Inc.) were not eligible to enter the Ann Arbor Public Schools, and that the letter should be considered due notice, effective upon receipt thereof, that no boys would be accepted in the Ann Arbor Public Schools from the Readjustment Center. The present action was accordingly commenced on September 12, 1969.

"If the individual plaintiffs have a right to attend the Ann Arbor Public Schools without payment of tuition, such right must be based upon either Mich. Stats. Anno. Sect. 15.3356 or Sect. 15.3358. These statutes, in pertinent part, read as follows:

" '§ 15.3356 All persons, residents of a school district not maintaining a kindergarten, and at least 5 years of age on the first day of enrollment of the school year, shall have an equal right to attend school therein.

\* \* \*

" '§ 15.3358 Children placed under the order or direction of courts or child-placing agencies [in licensed homes], and children whose parents or legal guardians are unable to provide a home for them and who are placed in licensed homes [or in homes of relatives] in the school district for the purpose of securing a suitable home for said children and not for an educational purpose, shall be considered residents for educational purposes of the school district where the homes in which they are living are located, and as such shall be admitted to the school in such district, except as provided in section 945 of this act.'

"The corporate plaintiff, University Center, Inc., is given no standing in the cited statutes to bring this action, nor does it recite in its pleadings or brief any other statutes or facts sufficient to give it standing to bring this action.

"None of the individual plaintiffs originally had or claims to have had domicile or legal residence

in the Ann Arbor School District; in fact, all but one of the individual plaintiffs are from states other than Michigan, and the one Michigan Plaintiff is from outside the Ann Arbor School District. If any of these patients acquire residence in the defendant's school district, it must be by reason of Dr. Kambly being guardian of their person 'and for school purposes' or by reason of their having lived at the University Center, while receiving medical treatment.

"The probate court order appointing Dr. Kambly guardian of the person of each of the individual plaintiffs is, of course, valid on its face. In suits of the present nature, however, a circuit court has jurisdiction and a duty to make an independent examination into the validity and effect of such guardianship, if such is claimed to bring the ward within the scope of Mich. Stats. Anno. Sect. 15.3356 or 15.3358.

"The portion of the order appointing Dr. Kambly guardian which states that the appointment is also 'for school purposes' has no special effect beyond the scope of Mich. Stats. Anno. Sect. 27.3178(206), whereby a guardian may have the 'care' of his ward's education. It should also be noted that probate courts, in furtherance of their traditional obligation to protect children, tend to construe liberally the residency requirements of the guardianship provisions of the Probate Code, where such is not contested. This is within the spirit and intent of the Probate Code and protects both the child and the public where a guardian is essential to assure that a child may receive necessary medical and surgical care, schooling, discipline, and control. The Court is of the opinion, however, and finds, that none of the individual plaintiffs in the present case have acquired actual residence within the Ann Arbor School District, sufficient to meet the requirements of either Mich. Stats. Anno. Sect. 15.3356 or Sect. 15.3358, simply by virtue of their having been

patients at the University Center, Inc. Further, the Court is of the opinion, and finds, that while the individual plaintiffs did have sufficient residence within the County of Washtenaw to enable the probate judge to appoint a special guardian for their person under Mich. Stats. Anno. 27.3178(210), so as to assure that they receive any necessary emergency surgical and medical care and treatment, control and discipline, there was not sufficient residence to give jurisdiction for the appointment of a permanent guardian for the care of their education, i.e., 'for school purposes,' under Mich. Stats. Anno. Sect. 27.3178(201) and (206). Accordingly, neither by virtue of their own original residence nor by that of their guardian, nor by authority of the Letters of Guardianship of the probate court, are any of the individual plaintiffs entitled to attend the Ann Arbor Public Schools without charge under Mich. Stats. Anno. Sect. 15.3356 or sect. 15.3358."

The trial court went on to hold that University Center, Inc., is not a "licensed home" within the meaning of MCLA § 340.358 (Stat Ann 1968 Rev § 15.3358).

On appeal, the Court of Appeals reversed, holding that the Center was a "licensed home" within the meaning of MCLA § 340.358 (Stat Ann 1968 Rev § 15.3358). Without suggesting that such holding was not correct, we do not pass upon the licensing issue, because we conclude that the trial court's analysis of the effect of guardianship under MCLA § 703.1 et seq. (Stat Ann 1971 Cum Supp § 27.3178 [201] et seq.) was in error.

The appointment of Dr. Kambly as guardian of the persons of the minor plaintiffs under MCLA § 703.1 (Stat Ann 1971 Cum Supp § 27.3178[201]) is not challenged. The probate court had jurisdic-

tion to entertain petitions for guardianship, enter orders and issue letters.

In each case, the purpose and legal effect of the guardian is determined by the statute. The order appointing guardians is conclusive upon the existence of the statutory grounds.

MCLA § 703.1 (Stat Ann 1971 Cum Supp § 27.3178 [201]) provides:

"Section 1. The judge of probate in each county may, in all proper cases, appoint guardians of inhabitants or residents in his county, and also to such as reside without the state, and have any estate within his county, as follows:

\* \* \*

"(2) Of the person of all such minors who are inhabitants or residents in his county, and have no father or mother living, competent and suitable to have the custody and care of the education of such minor, and of any minor who has 1 parent who is competent and suitable and another who though able to support and care for the education of said child, or assist therein, has nevertheless failed and neglected so to do, for a period of 1 year before the application for such guardianship. The probate court shall have jurisdiction concerning the appointment of such guardian superior to and regardless of jurisdiction of the circuit court in chancery arising out of any action for divorce or separate maintenance. The court may appoint the competent and suitable parent and no bond shall be required of a guardian of the person of a minor."

MCLA § 703.6 (Stat Ann 1962 Rev § 27.3178[206]) provides:

"Sec. 6. The father or mother of the minor, and if 1 of them be deceased, then the survivor thereof, being respectively competent to transact their own

business, and otherwise suitable, shall be entitled to the custody of the person of the minor and to the care of his education, and whenever by law the consent of the parents of a minor is necessary to any action by the minor, and the parents are separated or divorced, the parent or parents having custody of the minor by court order, shall be entitled to give or withhold the consent; Provided, That if the judge of probate of the proper county shall in any case, after an examination into the facts, make an order declaring either or both of the parents incompetent or unsuitable to have the custody of the person or the care of the education of the minor, in such cases the guardian appointed by the probate judge shall have the custody of the person of the minor and the care of his or her education."

MCLA § 703.7 (Stat Ann 1962 Rev § 27.3178[207]) provides:

"Sec. 7. If the minor have no father or mother living competent and suitable to have the custody of the person and care of the education of such minor, the guardian so appointed shall have the custody of the person and care of the education of such minor."

It follows that, in law, none of the minor plaintiffs has either "father or mother living competent and suitable to have the custody of the person and care of the education of such minor."

Dr. Kambly has, by virtue of court appointment, "the custody of the person and care of the education" of the minor plaintiffs.

The recitation in letters of guardianship that the appointment is as "guardian of the person and for school purposes only" does not create, as found by the trial court, a kind of hybrid guardianship, having less impact upon the status of the ward than

usually contemplated under MCLA § 703.1 (Stat Ann 1971 Cum Supp § 27.3178[201]).

The probate court is a court of statutory powers and jurisdiction. That court could not, even if it were so stated in the order, create a guardianship of the person of a minor ward which was limited to some special purpose.

Neither should we presume that the probate judge attempted to do so.

It is sufficient to observe that the various orders appointing Dr. Kambly guardian of the several minor plaintiffs each recited that the minor was possessed of no estate within the county, and further directed that "he [the guardian] give no bond."

Under such circumstances, the use of the word "only" merely denotes that the guardian is not thereby appointed guardian of the estate of the minor under MCLA § 703.1(1) (Stat Ann 1971 Cum Supp § 27.3178[201][1]).

Each of the petitions for guardianship recites that the named minor resides in the City of Ann Arbor. Each of the orders of appointment recites that the minor is a resident of Ann Arbor.

It is argued that the school board, not being party to the probate proceedings, is not bound thereby. The school board is not a proper party to the probate proceedings. It has no justiciable interest in such proceedings. Like all other municipal and governmental entities it may be affected by probate or circuit court determinations made in contemplation of the welfare of minor children.

But school boards have no more right to object to the appointment of a resident as guardian of a minor ward than they would have to object to an adoption by a resident, or to a custody award to a resident divorce litigant.

In all such cases, school population may be increased without the knowledge or consent of the board. But the board has no vested interest in the size of the school population. The interest of society in the placement of the child is fully represented and protected by the probate court.

The Court of Appeals is affirmed, and the circuit court reversed. Costs to the appellee.

T. M. Kavanagh, C. J., and Black, Adams, T. G. Kavanagh, Swainson, and Williams, JJ., concurred with T. E. Brennan, J.