In re the GUARDIANSHIP OF Martha Yolanda MONTEZ, Rachel Rene Amayo, and Frank Anthony Amayo, Minors,

**Gloria H. Cupp, Guardian**

**Diamond R–IV School District, Intervenor-Appellant.**

Nos. 13217–13219.

Missouri Court of Appeals, Southern District, Division One.

April 13, 1984.

Motion for Rehearing or to Transfer to Supreme Court Denied May 1, 1984.

No appearance for guardian and wards.

Nolen W. Berry, Neosho, for intervenor-appellant.

TITUS, Judge.

Diamond (Missouri) R–4 School District appeals from an order of Division III (Probate) of the Circuit Court of Newton County denying its Motion to Set Aside Granting Letters of Guardianship previously granted to Gloria H. Cupp.

On August 26, 1982, Mrs. Cupp, a resident of Joplin, Newton County, Missouri, and the Joplin R–8 School District, filed petitions in the above-named Newton County court seeking to be appointed guardian "of the person only" of three minors under the age of 14 years. One minor, Martha Montez, is a sister of the petitioner while the petitioner is an aunt of the other two minors, Rachel and Frank Amayo. On the same day the petitions were filed, the court granted letters of guardianship to Mrs. Cupp for each minor. All letters contained the proviso that "no bond required this guardianship for school purposes only." The reason given in the petition for Martha Montez's need for a guardian was that her mother and only living parent "cannot fully care for said child at this time and it is in child's best interest that she be placed under the guardianship of Petitioner so that she will be afforded better care than can be presently afforded her by her natural mother." The need of Rachel and Frank Amayo for a guardian was alleged to be that their sister "is now residing with Petitioner ... and it is against the best interest of said [children] that [they] be separated from said sister." Martha Montez's mother and the two parents of Rachel and Frank Amayo signed written waivers of notice and waivers of their rights to be appointed guardians. The parents, all of whom reside in the Diamond R–4 School District, each made written request that Mrs. Cupp be appointed guardian of their children.

Shortly after the letters of guardianship were issued, supra, a petition in mandamus was filed in the Circuit Court of Jasper County at Joplin on September 17, 1982. Plaintiffs therein were Martha Montez and Mrs. Cupp. Defendants were the superintendent of the Joplin R–8 School District and the principal and assistant principal of the South Junior High School of Joplin. In essence, the petition alleged that defendants on September 13, 1982, wrongfully expelled Martha from school on the pretext that she was a resident of the Diamond school district. After the preliminary order in mandamus issued, defendants answered and asked the court to determine in which shcool district Martha was legally domi-

ciled and if it was determined she was domiciled in the Diamond school district to then adjudge whether she should pay non-resident tuition to attend the Joplin public schools. Thereafter on October 8, 1982, the Diamond school district was allowed to intervene and it, inter alia, pleaded that, albeit Martha was the ward of Mrs. Cupp, the guardianship was "for school purposes only" which did not confer a legal guardianship or establish the legal residence of Martha. The Diamond school district additionally alleged that to allow Martha to attend the Joplin public schools without payment of non-resident tuition would deprive the Diamond school district of state school funds and unlawfully burden the Joplin school district with the cost of educating Martha. Following a trial in the mandamus action, the court on October 19, 1982, ruled that Martha Montez was living in the Joplin school district and was a ward of her sister solely for the purpose of attending Joplin schools tuition-free. It made the writ absolute and ordered the Joplin district to accept Martha as a student therein subject to that district being paid the current non-resident tuition of $1,902 less the amount of school taxes paid to said district by Martha's parent. However, plaintiffs' motion to reopen the case was sustained but the matter was subsequently placed in limbo pending determination of a writ of certiorari filed November 5, 1982, in the Circuit Court of Newton County by the Diamond school district to test the legality of the letters of guardianship granted by the probate division of that court. To our knowledge neither the mandamus action in the Jasper County Circuit Court nor the certiorari cause in the Newton County Circuit Court has been finally determined.

Apparently prompted by the findings and ruling of the Jasper County Circuit Court in the mandamus action, supra, Mrs. Cupp on November 5, 1982, filed in the probate division of the Circuit Court of Newton County motions to amend the letters of guardianship with respect to the three minors in question. Each motion stated that inclusion of the phrase "this guardianship for school purposes only" in the initial letters "has had the effect of apparently limiting [Mrs. Cupp's] authority as guardian, has induced collateral attack upon a final judgment of this Court, has resulted in unnecessary litigation, has resulted in a denial of [the] wards' right to public instruction within the school district wherein they reside, and has in other ways resulted in detriment to the welfare of said wards." The motions prayed for amended letters of guardianship "consonant with the facts and in the best interests of said children." On the same day the motions were filed, the mothers of the minors involved herein and Mrs. Cupp testified. In substance their testimony was that the parents had, in fact, relinquished all care and control of the children to Mrs. Cupp, that Mrs. Cupp provides money for their necessities and that Mrs. Cupp, since becoming guardian, has had and exercised plenary control of the children. Immediately following the hearing amended letters of guardianship for each child were issued to Mrs. Cupp giving her all-inclusive powers and duties as guardian. Following this, the Diamond school district was permitted to intervene in the guardianship estate in question. Its avowed purpose was to have the court set aside, terminate or rescind the granting of the letters of guardianship in question because said letters deprive the Diamond school district of "the right to recover State funds which it would otherwise be entitled to receive." As subsequently explained upon trial of the Diamond school district's contentions, "[i]f a child attends a school district other than that of his physical residence and pays tuition to that district, then the resident school district can get the child's attendance records and get state aid." The court overruled Diamond school district's motions to set aside granting of the guardianship letters and ruled (1) the children are in fact since the date of the initial issuance of letters of guardianship residents of the Joplin school district; (2) the children, in contemplation of law since issuance of the initial letters of guardianship, are residents of the Joplin school dis-

trict; and (3) there is no distinction in law between "domicile" and "residence." The Diamond school district appealed.

■ The involved guardian and minors have not appeared in this court on appeal by brief or otherwise. Although there may be merit in the claim of the Diamond school district that the court nisi erred in granting the letters of guardianship because the requirements of § 475.030–4 RSMo 1978[1] were not met, we are mindful that in order for a party to maintain an action it must have some actual and justiciable interest susceptible of protection in the cause. *Schlarman v. City of St. Charles*, 623 S.W.2d 57, 59[5] (Mo.App.1981). Whether the school district has a legally protectable interest in the guardianship so as to confer standing upon appeal or otherwise is a matter for sua sponte determination and if the school district, in a legal sense, was not aggrieved by the action below we have no jurisdiction. *Schweig v. City of St. Louis*, 569 S.W.2d 215, 220 (Mo.App.1978); 4 Am. Jur.2d, Appeal and Error, § 183, at p. 692; cf. *Kansas City v. Reed*, 546 S.W.2d 727, 730–731[1] (Mo.App.1977).

■ Upon timely application, intervention is granted as a matter of right provided the applicant "claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Rule 52.12(a)(2), V.A.M.R.

■ The type of "interest" contemplated by Rule 52.12 does not include a mere remote, consequential or conjectural possibility of being in some manner affected by the result of the original action. It must be such a direct claim upon the subject matter of the action that the intervenor will either directly gain or lose by operation of the action to be taken. In other words, one interested in an action is a person interested in the outcome and result thereof because he has a legal right which will be directly affected thereby or a legal liability which will be directly enlarged or diminished by the outcome of such action. *Matter of Trapp*, 593 S.W.2d 193, 204 (Mo. banc 1980); *Bunting v. McDonnell Aircraft Corporation*, 522 S.W.2d 161, 169[13] (Mo. banc 1975); *State ex rel. Farmers Mutuals Automobile Ins. Co. v. Weber*, 364 Mo. 1159, 1164, 273 S.W.2d 318, 321[3, 4] (banc 1954).

■ The sole subject matter of the action in the probate division of the Circuit Court of Newton County concerned the appointment of a guardian for three minors. Diamond school district's allegations and evidence that granting the letters of guardianship might possibly frustrate its future efforts and desires to obtain state aid for the school is not an immediate and direct claim upon the guardianship nor is it a direct claim that the school for a certainty will lose by the direct operation of the court in issuing the letters of guardianship. The initial ruling of the Circuit Court of Jasper County in the mandamus action, supra, illustrates that issuance of the letters of guardianship did not per se directly diminish or affect the rights of the Diamond school district. The Diamond school district had no more right to or interest in objecting to the appointment of a guardian for the minor wards than it would have to object to their adoption or a custody award to a dissolution of marriage litigant. *University Center, Inc. v. Ann Arbor Public Schools*, 386 Mich. 210, 191 N.W.2d 302, 306[6] (banc 1971).

The consolidated appeals herein are dismissed.

GREENE, C.J., and CROW, J., concur.

FLANIGAN, P.J., not sitting.

1. Section 475.030–4 reads: "Letters of guardianship of the person of a minor may be granted in the following cases: (1) Where a minor has no parent living; (2) Where the parents or the sole surviving parent of a minor are adjudged unsuitable or incompetent for the duties of guardianship; (3) Where the father of a minor is imprisoned in the penitentiary of this state."