No. 14447

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

IN RE THE GUARDIANSHIP OF
JOSEPH ANTONIO EVANS,
a minor.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Appellant:

John Albrecht argued, Helena, Montana

For Respondent:

Richard Llewellyn argued, County Attorney, Boulder, Montana
Patrick Flaherty argued, Boulder, montana

---

Submitted: September 15, 1978

Decided: NOV 2 8 1978

Filed: NOV 2 8 1978

*Thomas J. Kearney*

Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

On January 6, 1978, Shirley Frisch, petitioner, filed a petition for appointment as guardian of a minor in the District Court of the Fifth Judicial District, Jefferson County, pursuant to Title 91A, Chapter 5, Part 2, 1947 Revised Codes of Montana (Guardians of Minors). After a hearing on February 15, 1978, the District Court appointed Frisch guardian of the minor and issued letters of guardianship to her. The minor in the action is a severely retarded 17 year old boy who at all pertinent times until the present has been in the care and custody of Boulder River School and Hospital. The parents of the boy are now divorced, both live out of state, and they have had no contact with him in recent years.

On August 9, 1978, petitioner requested a hearing before the District Court to correct the lack in the record of any notice to the Boulder River School of the earlier guardianship proceedings. Until this time, Frisch had acted as guardian of the minor and performed acts such as attempting to enroll him in public special education classes, although she had not yet brought the minor into her home.

At the time of the hearing and without prior notice, petitioner was served with an order granting the Jefferson County Department of Welfare and the State Department of Social and Rehabilitation Services (SRS) the right to intervene in the proceedings and with an order directing that further proceedings in the matter be held pursuant to Title 91A, Chapter 5, Part 3 of the Uniform Probate Code relating to guardianships of incapacitated persons. On the same date the trial court vacated its order appointing petitioner guardian of the minor. Again, the order was issued without notice to Frisch.

From these three orders, petitioner seeks relief. Upon proper showing by the petitioner, this Court assumed jurisdiction to hear the matter as a writ of supervisory control.

The petitioner has presented the following issues to this Court for review:

1. Was intervention by the county welfare department and SRS in the subsequent guardianship proceedings timely and proper?

2. Is the guardian of a mentally retarded minor to be appointed according to the statutory procedure for appointing a guardian of a minor or according to the procedure for appointing a guardian of an incapacitated person?

3. Was the vacating of the order appointing appellant as guardian procedurally improper?

At oral argument, this Court granted a motion by the County Department of Welfare and SRS permitting these administrative agencies to withdraw from this case. This withdrawal renders moot, for purposes of this opinion only, the determination of the first issue.

We note, however, that the Jefferson County High School District has moved the District Court for leave to intervene in the guardianship proceedings. To date, this motion has not been acted upon. The actions of various governmental agencies in Jefferson County intervening and withdrawing in this guardianship proceeding and effectively forestalling petitioner in her efforts to enroll the minor in public special education class presents some serious questions.

Although the question of the propriety of intervention by the high school district is not before us, we do note that school boards, like administrative agencies, have only those powers specifically granted to them by statute. Wyatt

v. School District No. 140 (1966), 148 Mont. 83, 87, 417 P.2d 221, 223. They can act only when empowered to do so and must keep within the limits of the powers and authority granted them. State ex rel. Anderson v. Board of Equalization (1957), 133 Mont. 8, 17, 319 P.2d 221, 226-27; Abshire v. School District No. 1 (1950), 124 Mont. 244, 247, 220 P.2d 1058, 1060. We expressly reserve judgment on whether intervention in guardianship proceedings is properly within the powers and authority of school boards as a question initially for the District Court. But see University Center Inc. v. Ann Arbor Public Schools (1971), 386 Mich. 210, 191 N.W.2d 303, 306.

Frisch first filed for appointment as guardian of the minor, then age 16, on January 6, 1978. She proceeded under sections 91A-5-201 through 212, R.C.M. 1947, relating to guardians of minors. Notice of the hearing on this petition was given only to the parents of the minor, neither of whom had the care or custody of the minor, a resident of Boulder River School and Hospital. Notice was not given to the minor himself or to Boulder River School. Section 91A-5-207(1), R.C.M. 1947, requires notice in such proceedings to be given to the minor if 14 years of age or older; to the person having his principal care and custody during the 60 days preceding the date of the application; and to any living parent of the minor.

Our statutes clearly indicate that waiver of notice to a mentally retarded person is not to be regarded as either unnecessary or automatically waived. See sections 38-1203(3), R.C.M. 1947, (waiver of rights by mentally retarded person must be knowingly and intentionally made) and 91A-5-309(2), R.C.M. 1947 ("Waiver of notice by the person alleged

to be incapacitated is not effective unless he attends the hearing or his waiver of notice is confirmed in an interview with the visitor").

Therefore, although Boulder River School has apparently acquiesced in the appointment of Frisch as guardian, failure to send notice to the minor rendered the judgment of the District Court appointing her guardian of the minor void. Grauman v. Chambers (1948), 122 Mont. 31, 36, 198 P.2d 629, 632; In re Guardianship of Bouchat (1974), 11 Wash.App. 369, 522 P.2d 1168, 1170. Her status was merely that of a guardian de facto. Grauman v. Chambers, supra.

However, when Frisch attempted in the August proceedings to correct the lack of notice in the record, the District Court ordered that any futher proceedings on the guardianship petition be conducted according to the guardianship of incapacitated persons procedure. This is error.

The Montana Uniform Probate Code establishes two separate systems to provide protection for persons under disability and their property. In so doing, the legislature has defined two groups of incompetent (for these purposes) people-- minors and incapacitated persons. The definitions are in part mutually exclusive.

An incapacitated person is defined in section 91A-5-101(1), R.C.M. 1947, as:

> ". . . any person who is impaired by reason of mental illness, mental deficiency, physical illness or disability, advanced age, chronic use of drugs, chronic intoxication, or other cause (except minority) to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person or which cause has so impaired the person's judgment that he is incapable of realizing and making a rational decision with respect to his need for treatment;" (Emphasis added.)

Thus, a person afflicted only with incapacity caused by minority is specifically excluded from coverage under the guardianship of incapacitated persons statutes.

A minor, on the other hand, is defined as "a person who is under eighteen (18) years of age." Section 91A-1-201(25), R.C.M. 1947. Thus, all minors, regardless of mental condition, have been designated as persons under disability needing the protection of a guardian. The fact that a minor may be mentally retarded adds nothing to the legislative determination that he is in need of protection. Even the brightest minor would have a guardian appointed for him if proper procedures were followed and circumstances warranted.

Further, the procedures for removal of a guardian on petition of the ward indicate that the legislature intended guardians for all minors to be appointed under the minors procedure. A ward whose guardian is appointed under the incapacitated persons procedure may petition at any time for removal of the guardian without regard to his (the ward's) age. Section 91A-5-307(1), R.C.M. 1947. A ward whose guardian is appointed under the minors procedure may petition for removal of his guardian only if he (the ward) is 14 years of age or older. Section 91A-5-212(1), R.C.M. 1947. Thus, if a guardian of a mentally retarded 10 year old were to be appointed under the incapacitated persons procedure, the ward could immediately petition for his removal while a 10 year old of normal intelligence whose guardian was appointed under the minors procedure could not so petition. Clearly, the legislature could not have intended mentally retarded minor wards to have such powers of removal while denying them to minor wards of normal intelligence.

The person over whom guardianship is sought to be established in this case is both a minor and mentally incapacitated. The legislature has provided a specific procedure for creating a guardianship of a minor. At the same time, it has specifically excluded the incapacity of minority from coverage under the general procedure for creating a guardianship for an incapacitated person. In this case, the specific minors procedure, not the general incapacitated persons procedure, should be followed.

The guardianship of a minor ends when the minor attains majority. Section 91A-5-210, R.C.M. 1947. If at that time, it appears that the person needs the continued protection of a guardian, new proceedings may be instituted under the guardians of incapacitated persons provisions. Franklyn v. Sprague (1887), 121 U.S. 215, 229, 7 S.Ct. 951, 958, 30 L.ed. 936, 941-42; 39 Am.Jur.2d Guardian & Ward §18.

Mental retardation may be a changing condition difficult of diagnosis. While these people may never achieve normal intellectual function, they may achieve the ability later in life to care for themselves without the aid of a guardian. This possibility undoubtedly underlies the legislature's action in establishing community based facilities to which Boulder River School patients are currently being released. See section 38-1201, R.C.M. 1947. Ideally, a person should be re-evaluated periodically to see if continuation of any guardianship is warranted. This is especially true in the case of a guardianship for a young child. A bifurcated system where a guardian of a minor is appointed according to the minors procedure regardless of the minor's mental capacity followed by an evaluation when the minor reaches 18 as to whether continuation of the guardianship as

one of an incapacitated person is warranted seems best to guarantee this periodic evaluation of the wisdom or necessity of the guardianship.

Until that time, the guardian of a minor has sufficient authority to look out for the ward's interest. Section 91A-5-209, R.C.M. 1947; Franklyn v. Sprague, supra. But to appoint a guardian for a mentally retarded youth under the incapacitated persons procedure when such a guardianship can continue indefinitely without further adjudication, section 91A-5-306, R.C.M. 1947, is contrary to the right of all persons to control their own lives upon reaching adulthood. 1972 Mont. Const. Art. II, §§ 3, 14; Mitchell v. McDonald (1943), 114 Mont. 292, 300, 136 P.2d 536, 541.

As we have noted, the original appointment of Frisch as guardian of the minor is void for lack of notice to the minor involved. This case therefore must be remanded for further proceedings under the guardian of minors procedures. On remand, we feel some directions on the proper implementation of this procedure are necessary.

In our view, the legislature did not intend that a guardian of any minor, mentally retarded or not, should be appointed in such a summary proceeding as apparently happened in the original appointment of Frisch in February. A glance at the statutory scheme confirms this.

Section 91A-5-207(1), R.C.M. 1947, requires the notice to the interested parties that was not given in this case. Subsection (2) of the same statute provides for a hearing on the petition after which the court is to make specific findings:

> ". . . that a qualified person seeks appointment, venue is proper, the required notices have been given, the requirements of section

91A-5-204 have been met [relating to termination of parental custody rights], and <u>the welfare</u> <u>and</u> <u>best</u> <u>interests</u> <u>of</u> <u>the</u> <u>minor</u> <u>will be</u> <u>served</u> <u>by</u> <u>the</u> <u>requested</u> <u>appointment</u> . . ." (Emphasis and bracketed material added.)

The record here discloses no notice to, or written waiver of notice by, either Boulder River School or the minor, making finding that the required notices have been given impossible. Likewise, given the fact that the minor was identified in the original petition as a resident of Boulder River School, a finding that the welfare and best interests of the minor would be served without examination into his possible medical and mental problems is improper and indicates the procedure was too summary.

All in all, it appears that these statutory safeguards for the protection of the minor were either ignored or overlooked. If guardians of any minors are being appointed in such a "summary" fashion, then the state is undoubtedly committing a great injustice to some of these minors, regardless of their mental capacity. The concept of guardianship was designed to provide protection for those incapable of protecting themselves. If the appointing court ignores the available statutory protections of the minor's interest, then the statutory scheme and entire guardianship concept become farces. All minors, regardless of mental condition, are defined as persons in need of protection. Section 91A-5-201 et seq. To insure they receive the needed protection, the procedure for appointing a guardian for them should be as rigorously followed as the procedure for appointing a guardian of a mentally retarded adult.

We agree the situation here involving an apparently severely retarded boy residing in Boulder may call for special consideration. In such cases, the statutory provision for

appointment of an attorney to represent the minor, as was belatedly done here, comes into play. Section 91A-5-207(4), R.C.M. 1947.

Special consideration for persons in this minor's position is afforded by the statutes governing release of a resident from Boulder River School. Section 38-1222(1), R.C.M. 1947, requires a specific habilitation plan, designed to "maximize his human talents and enhance his ability to cope with his environment". Each individualized habilitation plan, which is to be supervised by a medical doctor or a specialist in developmental disabilities, is to include plans for discharge from the institution. Section 38-1222(4)(f). Each resident discharged to the community is to have a transitional habilitation assistance program. Section 38-1222(8). Notice and the possibility of a hearing on the patient's release are provided in section 38-1209(3), R.C.M. 1947. These release provisions in combination with a proper minors guardian proceeding would doubly insure that the best interests and welfare of a minor such as the minor here involved were served.

Because of the procedural defects specified above, the District Court was without authority to make the original appointment of Frisch as the minor's guardian. Grauman v. Chambers, supra. Therefore, she had for the period between the original defective appointment and these proceedings, only the status of a guardian de facto of the minor. In that capacity, she has acted on behalf of the minor with the apparent acquiescence of the administrator of Boulder River School, one of the parties on which she originally failed to serve notice of the guardianship proceedings in February. We also note that the only parties objecting to her serving

as this minor's guardian have been the administrative agencies which have since withdrawn from the case.

In acting as this minor's guardian petitioner has attempted to enroll him in a public school special education class. That attempt has resulted in administrative proceedings which are pending at this time and at which the interests of the minor need to be represented. There may be pending other similar matters petitioner has undertaken as the minor's guardian which do not appear in the record.

Until a final determination has been made we see no reason why petitioner may not continue to act as guardian de facto of the minor under the supervision of the District Court as to all pending matters. Allowing her to do so at this time would best serve the interests of the minor. In re Guardianship of French (1975), 167 Mont. 540, 543 P.2d 173.

Therefore a writ will issue directing the District Court to hold a hearing and conduct further proceedings on Frisch's petition in accordance with the applicable statutory procedures specified herein. The order of the District Court vacating letters of guardianship is stayed with respect to all pending matters in which petitioner has served as guardian of the minor until a final judgment on her petition for guardianship is rendered.

_____
                Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
        Justices

-11-