No. 00-481 and 00-486

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 86

JANET B. REDIES,

        Protected Person and Appellant,

   v.

C.A. COSNER and JUDY UERLING,

        Petitioners and Respondents.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                      In and for the County of Yellowstone,
                      The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:
                Alexandra Volkerts, Andree Larose, Montana Advocacy Program, Missoula,
                Montana

        For Respondents:
                Lynn M. Grant, Peterson & Schofield, Billings, Montana (Conservator
        Cosner); John Addy, Billings, Montana (Conservatorship and Guardian
   Uerling)

        For Amici:
                James P. Reynolds, Reynolds, Motl, Sherwood, Helena, Montana (AARP;
                ADAPT Montana; the Association of Disabled Students at the
        University of Montana (ADSUM); AWARE Group Homes (AWARE);
        the Brain Injury Association of Montana (BIA); the Coalition of
Montanans Concerned with Disabilities (CMCD); the Montana Center
for Disabilities (MCD); the Montana Mental Health Association
(MHA); the Montana Senior Citizens Association (MSCA); NAMI -
Montana Association for the Mentally Ill (NAMI-MT); People First;
Parent's, Let's Unite for Children (PLUK); the State Independent Living
Centers Council (SILC); Summit Independent Living Center (Summit);
and the Western Montana Mental Health Center, Inc. (WMMHC))

                                  Submitted on Briefs: March 29, 2001
                                        Decided: May 2, 2002

Filed:

_____
                      Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      The Appellant, Janet Redies (Redies), appeals from two orders of the Thirteenth Judicial District Court, Yellowstone County, discharging the Respondents, her conservator, C.A. Cosner (Cosner), and her guardian, Judy Uerling (Uerling), without liability.  We reverse.

¶2      We address the following issues on appeal as framed by this Court:

¶3      1.  Did the District Court err in holding that the inventory requirement in § 72-5-424, MCA, is discretionary?

¶4      2. Did the District Court err in discharging the conservator and guardian without liability?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶5      Prior to the events that gave rise to this conservatorship and guardianship, the parties in this case were involved in a different dispute.  Rosalie Redies (Rosalie), the mother of Redies and Uerling, sold her real property in Billings and deposited the proceeds in an account which Redies and Uerling could both access.  Upon discovering that Redies had withdrawn over $63,000 from this account without Rosalie's knowledge, Uerling withdrew the rest of the money so that neither Redies nor Rosalie could access it.  Eventually, the parties reached an agreement by which Redies signed a note to repay Rosalie, the money withdrawn by Uerling was returned to Rosalie, and Cosner, a certified public accountant (CPA), was appointed conservator for Rosalie.  This agreement was reached in September 1994.  These events are relevant to explain how Cosner came to be conservator for both Rosalie and Redies and also serve as background for Redies' belief that Cosner and Uerling had conflicts of interest that prevented them from properly managing her affairs.

¶6      A few months later, the events that gave rise to this action occurred.  Redies moved from Billings to Wyoming to start a new job.  On or about May 29, 1995, Redies was in a bicycling

2

accident which resulted in a temporary coma and traumatic brain injury. Redies was taken to St. Vincent's hospital in Billings for treatment. After two months had passed and realizing the severity of Redies' condition, her mother Rosalie and her sister Uerling petitioned the district court in Billings for appointment of a conservator and guardian. In September 1995, the court granted the petition and appointed Cosner as conservator and Uerling as guardian for Redies as requested in the petition.

¶7     Following their appointment, Cosner and Uerling met with Uerling's counsel and the counsel appointed for Redies by the court. At this meeting, the parties developed a management plan for Redies' estate. The overall goal of the plan was to "properly address Janet's needs and to conserve and properly manage her property." The parties addressed specific assets in Redies' estate and further agreed that the plan should "maximize the amount of Jan's wealth that is exempt from recapture by the government [Medicare] or the claims of creditors." However, because of Redies' existing debt which included mounting medical bills, because of the possibility of bankruptcy and because Cosner was conservator for Rosalie as well, the plan also sought to "maximize the amount of the combined family estate." Therefore, the plan also discussed the possibility of Rosalie revising her will to prevent any devise to Redies actually going to creditors or the government under the recapture provisions of the Medicare program. Shortly after this meeting, Cosner determined that while Redies had substantial assets which included 20 acres in Red Lodge, payments due from the sale of her former Billings restaurant Juliano's, and its liquor license, vehicles, and other assets, these assets would be quickly depleted by medical costs, since Redies did not have health insurance to cover her bicycle accident.

¶8     Cosner proceeded to manage Redies' property. This management consisted of selling real

3

and personal property that was owned by Redies, paying debts owed by Redies, putting the remaining personal property in storage, and seeking settlement with the remaining creditors. Cosner successfully avoided bankruptcy and was able to negotiate forgiveness of approximately $123,000 in medical bills. After this was resolved, Uerling qualified Redies for Medicaid and Social Security Supplemental Security Income (SSI) coverage. At the same time that Cosner and Uerling addressed Redies' finances, Uerling arranged medical care for Redies. Eventually, Redies made a significant recovery.

¶9    In 1998, Redies began to question the need for a guardian because she believed she understood the "risks and benefits so as to make decisions in her best interest." She also began to question the disposition of her assets, since she was subsisting on SSI payments. Rather than contacting her court appointed counsel, she contacted new counsel in Missoula where she now resides. Through counsel, Redies sought details from Cosner regarding the management of her estate. She also retrieved her remaining personal property from Cosner. Over the next year, Cosner and Uerling attempted to answer Redies' questions through counsel. Each time Cosner and Uerling provided information, it gave rise to more detailed questions from Redies. The tone of correspondence eventually became completely adversarial.

¶10    As a consequence of this correspondence, Cosner and Uerling filed petitions to terminate their conservatorship and guardianship roles and a hearing was set. Redies sought to continue the hearing, but the District Court denied her motion. We note here that Redies asserts as a factual matter on appeal that she did not have enough time to prepare for the hearing, but does not argue on appeal that the District Court's denial of her motion for continuance was error. At the hearing, the parties each presented evidence, which largely consisted of the documentation produced as a result

4

of their adversarial correspondence. In addition, Cosner submitted final accountings and Uerling submitted a final report. After the hearing, the District Court issued its Findings of Fact, Conclusions of Law, and Order (Order) which found that Redies' estate was fully and accurately accounted for and properly managed. Accordingly, the Order discharged Cosner without liability. This Order also stated that Redies still needed a guardian. Later, the District Court allowed a new guardian to be substituted for Uerling by stipulation of the parties. Based on the findings in its earlier Order, the court issued a Judgment that also discharged Uerling without liability. Redies filed separate appeals from the Order discharging Cosner and the Judgment discharging Uerling, which we consolidated into one appeal upon motion of the Respondents. Further facts are discussed below.

## II. STANDARD OF REVIEW

¶11 We review a trial court's determinations of law *de novo. In re Kovatch* (1995)*, 271 Mont. 323, 326, 896 P.2d 444, 446. We review a trial court's findings of fact to determine whether those findings are clearly erroneous. *Kovatch,* 271 Mont. at 326, 896 P.2d at 446. A finding of fact is clearly erroneous if substantial evidence does not support it, if the district court misapprehended the effect of the evidence, or, if after reviewing the record, this Court is left with a firm conviction that a mistake has been made. *Eschenbacher v. Anderson*, 2001 MT 206, ¶ 22, 306 Mont. 321, ¶ 22, 34 P.3d 87, ¶ 22 (citing *Interstate Prod. Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287). However, we refined the clearly erroneous test when considering accountings submitted for conservatorships by holding that an accounting is clearly erroneous if it is not accurate, complete, and verifiable. *In re Estate of Clark* (1989), 237 Mont. 179, 184, 772 P.2d 299, 302.

5

## III. DISCUSSION

**¶12     1. Did the District Court err in holding that the inventory requirement in § 72-5-424, MCA, is discretionary?**

¶13     Redies first argues that, as a matter of law, the District Court erred in waiving the inventory requirement in § 72-5-424(1), MCA, because the statute is mandatory. Section 72-5-424(1), MCA, reads:

> Within 90 days after his appointment, every conservator *shall* prepare and file with the appointing court a complete inventory of the estate of the protected person, together with his oath or affirmation that it is complete and accurate so far as he is informed. The conservator *shall* provide a copy thereof to the protected person if he can be located, has attained the age of 14 years, and has sufficient mental capacity to understand these matters and to any parent or guardian with whom the protected person resides. (emphasis added)

Redies also argues that the District Court erred in waiving the inventory requirement by virtue of it findings that Cosner's final accounting only failed to inventory valueless items and that an inventory would unnecessarily deplete an estate where the liabilities were greater than the assets.

¶14     Amici are a group of public and private non-profit corporations or organizations which advocate for the rights of people who may become subject to a conservatorship or guardianship, including people with physical, mental, emotional or developmental disabilities and senior citizens. Amici agree with Redies and assert that this provision must be considered mandatory in order to properly protect the interests of people who cannot care for themselves.

¶15     In their joint brief on appeal, Cosner and Uerling argue that two other statutory provisions allow a court to make the inventory requirement in § 72-5-424(1), MCA, discretionary. Section 72-5-413(3), MCA, reads: "Upon notice and hearing, the court may give appropriate instructions or make any appropriate order." Regarding accountings, § 72-5-438(1), MCA, reads: "Each conservator shall account to the court for administration of the trust not less than annually, unless the

6

court directs otherwise, upon resignation or removal, and at other times as the court may direct." Cosner and Uerling assert that these two sections, specifically the language "unless the court directs otherwise," demonstrate a court's discretionary power to waive the 90 day inventory.

¶16    Regarding conservators, they assert that the Montana Uniform Probate Code, modeled after the Uniform Probate Code, is designed to give conservators broad management powers which they may exercise unless specifically restricted in the letters of appointment. *See* § 72-5-427, MCA, and § 72-5-430, MCA. Further, they assert that the District Court and Cosner both properly exercised their discretion because much of the property in Redies' estate was valueless[1] and because an inventory would have taken much needed assets away from the estate. Based on the above statutes and the facts as found by the District Court, they assert that the District Court's waiver was properly within its discretion because it is not important when an inventory is filed, as long as an adequate inventory is eventually filed.

¶17    In this case, the District Court stated:

> Mr. Cosner did not prepare a detailed inventory or submit the same within ninety (90) days of appointment as permanent Conservator. . . . At no time has this Court or any other required Mr. Cosner or any other Conservator to file an itemized inventory within ninety (90) days of appointment. . . . [U]nder the circumstances of this matter, primarily the limited number of valuable personal property assets, complete and thorough records and accountings of the conservator with regard to the valuable assets, and the condition of the protected person's personal residence which was filled with possessions the protected person hoarded and collected, waiver of that requirement is appropriate with respect to those items. To require . . . an itemized inventory . . . would have imposed an unreasonable financial burden on the estate

---

[1]Respondents alternately describe some of Redies' personal property as garbage, refuse, junk, trash, and a floor to ceiling mountain of worthless belongings; they describe her former residence as uninhabitable or like a pack rat.

7

which was never . . . sufficient to meet outstanding and accruing liabilities.

The District Court also indicated during the hearing that the Thirteenth Judicial District did not usually require inventories when liabilities exceed assets. However, after notice of appeal was filed in this action, Uerling petitioned this Court to take judicial notice of an order of the Thirteenth Judicial District issued after the District Court made its decision in this case. This order reads:

> Pursuant to § 72-5-423, MCA, one who is appointed a conservator is to act as a fiduciary and shall observe the standards of care applicable to trustees. As part of that duty, a conservator is required to **PREPARE AND FILE** an inventory of the estate he or she is appointed to protect within 90 days of his or her appointment (emphasis in original).

Presumably, Uerling requested judicial notice of this order to emphasize that the Thirteenth Judicial District was not requiring 90 day inventories previous to this order.

¶18     We cannot agree that the 90 day inventory requirement in § 72-5-424(1), MCA, is discretionary for Montana's trial courts or for conservators as a matter of law. First, the overall purpose of a conservatorship is to preserve the property of the protected person. *Clark*, 237 Mont. at 184, 772 P.2d at 302; *see also* § 72-5-421, MCA (court, directly or through conservator, to manage property for the benefit of the protected person). Further, a conservator will likely be appointed only when there are assets that should be managed, even if liabilities exceed assets. *See* § 72-5-409(2)(b), MCA (one of the main criteria to be considered by court in appointment of conservator is whether the protected person has property which will be wasted unless proper management is provided).

¶19     Second, the plain language of the statute at issue here reads "every conservator *shall* prepare and file with the appointing court a complete inventory of the estate" (emphasis added). *Shall* indicates a mandatory requirement. *In re City of Columbus Police Dept.* (1994), 265 Mont. 379, 381-82, 877 P.2d 470, 471. Further, the general rule is that a specific statute controls over a more

8

general statute. *Montana Dep't of Revenue v. Kaiser Cement Corp.* (1990), 245 Mont. 502, 506-07, 803 P.2d 1061, 1063-64; *In re Guardianship of Evans* (1978), 179 Mont. 438, 443, 587 P.2d 372, 375; § 1-2-102, MCA. Here, the 90 day inventory requirement is a specific mandatory requirement that controls the discretionary statutes cited by Cosner and Uerling.

¶20 Finally, and most importantly, although the main case cited by Redies, *In re Allard* (1914), 49 Mont. 219, 141 P. 661, addresses statutes which have since been replaced, we agree with its central holding that the purpose of the statutory inventory requirements at issue here is to furnish a means by which the conservator's management may be checked and the accounts verified. *Allard*, 49 Mont. at 226, 141 P. at 664. While we agree that trial courts and conservators are granted broad discretionary powers by § 72-5-421, -422, and -427, MCA, to manage a protected person's estate, the specific directive in § 72-5-424(1), MCA, provides the key baseline to determine whether that discretion is in fact properly exercised. *Compare Evans*, 179 Mont. at 445, 587 P.2d at 375 (guardianship system is designed to provide protection for those incapable of protecting themselves; if statutory protections are ignored the whole system becomes a farce); *In re Cuffe's Estate* (1922), 63 Mont. 399, 408-09, 207 P. 640, 644 (attorney fees disallowed because guardian failed to follow statutory inventory requirements). This baseline is also needed to establish if liabilities in fact exceed assets and to determine the proper course of management of the estate. Respondent's attempt to distinguish *Allard* based on the fact that in *Allard* no inventory was ever filed is not persuasive because it ignores the importance of a baseline or initial inventory in assessing the conservator's management of an estate. Therefore, we hold that § 72-5-424(1), MCA, is a mandatory requirement, even when the liabilities exceed the assets.

¶21 This case is a perfect example of why the 90-day inventory is mandatory. Here, Redies

sustained an injury which severely impairs her ability to remember the status of her affairs at the time of her accident. Respondents argue that all of Redies' contentions regarding her estate are based on her faulty memory. In Cosner's Memorandum in Support of Petition to Accept Final Accounting and for Discharge of Conservator filed with the District Court, Cosner himself stated:

> After responding to questions for nearly 20 months, providing documents, providing information, providing additional services to the estate in formulating recaps of check books, assets sales and expenditures, and other delays in making a final accounting to the Court, the Conservator ultimately filed his final accounting.

This 20 month back and forth between the parties concerned, for the most part, Redies substantial assets. If an opening inventory had been done of her assets, then submitted to and accepted by the District Court, these exchanges would have been avoided because Redies would not have had to ask specific questions about each and every asset in her estate. In short, the initial inventory required by § 72-5-424(1), MCA, would have protected both Redies *and Cosner* from what eventually occurred.

¶22 Regarding the fact that the District Court waived the inventory only as to valueless items, we agree that in constructing the inventory itself, a conservator should have discretion in deciding what to include and how to value the items in the estate. A conservator should not write down every half bar of soap sitting on a sink. *See* § 72-34-129, MCA (discretion shall be exercised reasonably). In this case, Cosner may have properly exercised his discretion in determining what was refuse. However, the point to be made here is that no initial inventory was done at all, so no baseline was established. Further, that exercise of discretion by the conservator in conducting the inventory must be verifiable, as we discuss below.

¶23 In this case, even if there was substantial refuse or garbage in the estate, it is undisputed that Cosner sold about $3,000 worth of personal property at garage sales. These assets were not worthless and if even a cursory inventory had been conducted, Redies would know what was sold.

10

¶24 Finally, the subsequent order of the Thirteenth Judicial District requiring inventories is irrelevant to prove the District Court's prior waiver was valid because we review a trial court's interpretation of a statute *de novo*. *Kovatch*, 271 Mont. at 326, 896 P.2d at 446. In this case, it appears the Thirteenth Judicial District merely corrected its legal error before ordered to do so by this Court. And it appears that the statutory safeguard in § 72-5-424(1), MCA, for Redies' protection was either ignored or overlooked by the trial court after Cosner and Uerling were appointed, even though the petition for appointment of a conservator and guardian stated both that Redies possessed property which needed protection and that an initial inventory would be provided to the court.

¶25 Given our holding that the District Court erred in waiving the inventory as a discretionary procedure, we now turn to address whether the District Court erred in finding that the failure to file an inventory was properly cured by the evidence presented by Cosner and Uerling regarding the management of Redies' estate.

¶26 **2. Did the District Court err in discharging the conservator and guardian without liability?**

¶27 Redies next asserts that the District Court erred in discharging Cosner and Uerling without liability. In her reply brief on appeal, Redies argues that the hearing was only intended to address the final accounting and that none of her claims regarding Cosner's or Uerling's liability were properly before the court. However, under § 72-5-438(2), MCA, a final account accepted by the court after notice and hearing adjudicates all previously unsettled liabilities of the conservator to the protected person relating to the conservatorship. *See also In re Smith* (1965), 145 Mont. 567, 568, 403 P.2d 604, 604-05. Therefore, it was incumbent upon Redies to bring her claims when Cosner petitioned for termination of the conservatorship. Further, as noted above, Redies does not assert on

11

appeal that the District Court erred when it denied her motion to continue. Therefore, Cosner's liability was properly before the District Court.

¶28 Regarding guardians, under § 72-5-324, MCA, the termination proceeding for a guardian does not necessarily adjudicate unsettled liabilities. However, in this case all of Redies' claims against Uerling concern Uerling's involvement in Cosner's management and accounting of her estate. Therefore, we hold that resolution of Uerling's liability was properly before the District Court as well. Further, because Redies' claims regarding Uerling only involve the accounting of the estate and not Uerling's care of Redies, the following discussion regarding Cosner also pertains to Uerling only to the extent she assisted in the accounting or management of assets.

¶29 Redies next argues that the District Court erred in discharging Cosner because she asserts the District Court's finding that Cosner met his fiduciary duty to properly manage and fully account for the estate is not supported by substantial evidence. Redies supports this argument in numerous ways. First, Redies argues that the accountings are inadequate because they are incomplete, unverifiable, and inconsistent. Redies further asserts that Cosner and Uerling had conflicts of interest, as demonstrated by the management plan and the revision of Rosalie's will, which prevented proper management of the estate. Redies also argues that Cosner failed to establish that Redies would not have been eligible for trusts that might preserve her property from Medicare recapture. She also asserts that Cosner improperly commingled Rosalie's and Redies' estates. Redies asserts the District Court erred in taking judicial notice of physician testimony regarding her mental state in a separate proceeding. In addition to these evidentiary issues, Redies argues that the District Court prevented her from pursuing all her claims of liability against the conservator when it stated during the hearing that probate issues regarding Rosalie's will could not be litigated during

12

that proceeding. She also asserts that the District Court erred by applying a conservator's ordinary duty of care to Cosner, rather than the duty of care owed by a conservator with special skills such as Cosner, a CPA. Finally, Redies asserts that Cosner's failure to inventory justifies withholding his compensation.

¶30    Amici generally agree with Redies. Specifically, Amici assert that in addition to the initial inventory, proper annual accountings are required by § 72-5-438(1), MCA, unless excused by the court. Amici believe that the two annual accountings filed in this case were inadequate. Amici also note two general issues in this case that gave them cause for concern relative to other protected persons. First, Amici assert that in meeting fiduciary duties, conservators and guardians must consider any legal trusts set up for protected persons that would shield their assets from government recapture provisions. Further, Amici expressed concern regarding conflicts of interest between conservators, guardians, and protected persons.

¶31    Cosner and Uerling assert that the District Court findings that Cosner met his duties to account for and manage Redies' estate were based on substantial evidence. They assert that Redies failed on appeal to argue that any of the District Court's findings of fact were clearly erroneous. They further argue that the District Court properly found that Cosner's accountings and the other documentation admitted as evidence at the hearing constituted a complete, accurate, and verifiable accounting of Redies' estate. This documentation includes the management plan, the amended final accountings prepared by Cosner and the documentation produced as a result of correspondence between the parties. Respondents assert these accountings in effect cured Cosner's failure to file an initial inventory because these documents properly account for all the valuable assets in Redies' estate. They also argue that it is within a conservator's discretion to decide whether items should be

13

included in an inventory and that, in this case, all items not accounted for to the District Court were valueless. In making this argument, Respondents assert that the District Court properly recognized a prior proceeding in which there was testimony that Redies may have an obsessive compulsive disorder that causes her to accumulate excessive amounts of personal property. They also argue that the District Court was correct in putting the burden on Redies to prove she was missing certain items of personal property because she actually signed for those items upon retrieving them from Cosner.

¶32    Cosner and Uerling further assert Redies did not suffer when Cosner properly exercised his discretion to commingle Redies' and Rosalie's estates because the personal property was commingled before Redies' accident and before Cosner was appointed, the loans between the estates were in Redies' best interests because the loans covered medical care and prevented her eviction from care providers, because Cosner had discretion to permit Uerling to use Redies' vehicle, and because any accounting mistakes Cosner made were to Redies' benefit because that money was consequently not available to Redies' creditors. Further, they argue that Cosner was at all times relying on the advice of Redies' court appointed counsel and Uerling's counsel, both of whom approved the management plan for Redies' estate.

¶33    Cosner and Uerling also argue that any potential conflict of interest Cosner may have had in serving as conservator for Rosalie and Redies was cured because all parties consented to his appointment with full knowledge of this dual role. They also assert that any conflict of interest Uerling might have had due to Rosalie's disinheritance of Redies' is moot because Rosalie no longer has any assets.

¶34    They further assert the District Court was correct in finding that even if minor errors were made in the accounting, Cosner met his fiduciary duties and Redies had no actual damages because

14

the amount of Redies' debt Cosner was able to have forgiven by her creditors was greater than any possible errors. They assert that the new counsel for Redies had more than adequate time to pursue claims on Redies' behalf because they represented Redies' interests for a year and a half before the District Court's hearing in this case. Finally, they argue that the District Court did not prevent Redies from pursuing her claims at the hearing.

¶35 Because we reverse and remand for audit on the issue of the adequacy of accountings as discussed below and because proper determination of the other issues depends in part on the status of the estate as demonstrated by an audit, we do not address any of the other arguments discussed above that were presented by Redies and Cosner. However, we hold that Redies properly argued on appeal that the District Court's findings were clearly erroneous because she contests numerous findings of fact.

¶36 The District Court found that taken as a whole, Cosner's documentation of Redies' estate was "true, accurate, complete and thorough." As mentioned above, the court waived the inventory requirement by finding that the valuable assets were accounted for. Further, the court found that due to the amount of debt forgiven by medical care providers, any discrepancies in the accounting would not have shown a loss. Basically, the District Court determined that the evidence before it was sufficient, despite the failure to file an initial inventory. Based on its findings, the District Court discharged Cosner and Uerling without liability to Redies.

¶37 Under § 72-5-423, MCA, a conservator is held to the standard of care applicable to trustees. Under § 72-34-114, MCA, a trustee has a duty to use the care, skill, and diligence of a prudent person. If a trustee has special skills, then the trustee has a duty to use those skills. Section 72-34-115, MCA. Section 72-5-424(2), MCA, requires a conservator to keep suitable records of

15

administration. Section 72-5-438(1), MCA, requires annual accountings unless waived by the court. Section 72-34-128, MCA, gives an example of an accounting that meets a trustee's standard of care. This accounting includes, among other things, a statement of receipts and disbursements of principal and income that have occurred since the last account; a statement of the assets and liabilities of the trust since the last account; the trustee's compensation since the last account; the agents hired by the trustee, their relationship to the trustee, if any, and their compensation since the last account.

¶38     We have addressed the issue of the adequacy of accountings before. In *Clark*, we held that conservators bear the initial burden of proving that their fiduciary duties were met. *Clark*, 237 Mont. at 183, 772 P.2d at 302. We further held that to meet that burden, an accounting must be accurate, complete, and verifiable. *Clark*, 237 Mont. at 184, 772 P.2d at 302. We stated: "[t]he conservator must . . . keep meticulous accounts of his administration of the estate, accounting for 'the source of every item of income and the purpose of every item of expense.'" *Clark*, 237 Mont. at 183, 772 P.2d at 302 (citing *Allard*, 49 Mont. at 229, 141 P. at 665). In that case, we held that the accountings were inadequate because no documentation was submitted to independently verify the conservator's accounting of assets. *Clark*, 237 Mont. at 183-84, 772 P.2d at 302. We noted that there was no evidence such as bank statements, receipts, or tax returns that could be used to verify the accounting. *Clark*, 237 Mont. at 183-84, 772 P.2d at 302. In *Allard*, we held that the testimony of a guardian regarding his management of an estate was insufficient to meet his initial burden because there was no way to verify the information. *Allard*, 49 Mont. at 226, 141 P. at 664 (the purpose of statutory scheme is to furnish a means by which the guardian's management may be checked and his accounts verified).

¶39     In this case, Cosner filed two intermediate annual accountings in 1996 and 1997 which each consisted of nothing more than three numbers: total income, total expenditures, balance remaining. There is absolutely nothing about these intermediate inventories which would enable a court to verify Cosner's management of the estate. Further, because no initial inventory was done, it is impossible to reconcile these two accountings with anything. In fact, the two accountings are not reconcilable with each other. Therefore, these accountings are incomplete and unverifiable.

¶40     Regarding Cosner's final accountings, these reports do summarize income and expenses by general category. Further, these reports appear to be based in large part on Cosner's "Recaps" of checking accounts, also submitted as evidence, which include check numbers and dates. However, like the situation in *Clark*, no bank statements, tax returns, receipts, or appraisals were submitted with which the District Court could have sufficiently verified Cosner's accounting. Further, no pictures were taken to document Cosner's determination that much of Redies' estate was refuse. Consequently, like the situation in *Allard*, much of Cosner's evidence is not significantly verifiable because it consists mainly of Cosner's own testimony and self-created documents.

¶41     Cosner asserts that he has documents to back up his summary accountings, as discussed in correspondence between Redies and Cosner entered as evidence. Nevertheless, virtually none of these types of documents were entered as evidence. Further, although the District Court found Cosner credible, credibility is not sufficient as documentation of accountings. Rather, verification must consist of a means by which a trial court can independently determine accountings are generally complete and accurate. This is pursuant to the court's duty to assure a conservator is acting in the best interests of the protected person as contemplated by the statutory scheme. *See* § 72-5-421, MCA.

¶42    In this case, Cosner was responsible for an estate worth almost half a million dollars over a four year period. Cosner failed to file an initial inventory and failed to file proper annual inventories. Further, the final accountings are insufficient to compensate for these failures because the accountings are not significantly independently verifiable. Therefore, because the record here does not contain a complete, accurate and verifiable accounting as required by *Clark*, we conclude that the District Court's determination that Cosner met his burden to prove he properly accounted for Redies' estate is clearly erroneous. Further, we hold that like the appellant in *Clark*, the proper remedy in this case is to remand for an audit pursuant to § 72-5-438(3), MCA.

¶43    We note in making this holding that we do not intend it to be a comment on whether or not Cosner and Uerling in fact properly managed the estate. Further, while we agree that the burden is on the conservator to show proper management, once the conservator has met that burden, the burden then shifts to the protected person. For example, in this case, Redies argued that she no longer had certain items of personal property and argued Cosner had the burden to show where the items were. However Cosner delivered all remaining personal property to Redies before the hearing with an estimated inventory and Redies signed for that property. Therefore, Redies has the burden to show that the items she asserts are missing but that are listed on that inventory were never delivered to her.

¶44    Finally, Amici assert that given the importance of enforcing statutes for the protection of people who cannot care for themselves, we should use this case as a vehicle to set forth standards for district courts and conservators similar to those used in California's HANDBOOK FOR CONSERVATORS (1992) approved by the Judicial Council of California. However, other than the two issues properly addressed here, i.e. whether an initial inventory is mandatory and what constitutes a complete,

18

accurate and verifiable accounting, we cannot address other standards regarding conservators or guardians that were not appealed. While we agree that a handbook for conservators or for guardians would be helpful, we decline to adopt these standards in this Opinion. We do, however, take this opportunity to encourage the State Bar or other interested parties to consider pursing the adoption of such standards or guidelines.

## IV. CONCLUSION

¶45   Because the District Court erred in waiving the initial inventory and because the final accountings accepted by the District Court are not verifiable, we remand to the District Court for an audit.

¶46   We reverse.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER
/S/ JIM RICE

Justice W. William Leaphart did not participate in this decision.

19