No. 02-053

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 253N

SAMUEL SCOTT JOHNSON,

        Petitioner and Appellant,

    v.

STATE OF MONTANA,

        Respondent and Respondent.

APPEAL FROM:    District Court of the Fourth Judicial District,
                    In and for the County of Missoula,
                    The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Samuel Scott Johnson (pro se), Shelby, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; John Paulson,
            Assistant Attorney General, Helena, Montana

            Fred Van Valkenburg, Missoula County Attorney, Missoula, Montana

                Submitted on Briefs:  May 9, 2002

                      Decided:  November 21, 2002

Filed:

_____
                    Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), of the Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result, to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2      The Appellant, Samuel Scott Johnson, filed a petition to adjust restitution payment in the District Court for the Fourth Judicial District in Missoula County.  In his petition, Johnson requested that the money deducted from his salary by the Department of Corrections (DOC) be applied toward his restitution obligation.  Johnson subsequently filed a motion for summary judgment, in which he alleged that the Respondent, State of Montana, failed to timely answer his petition.  The District Court denied both Johnson's petition to adjust restitution payment and his motion for summary judgment, and Johnson appeals.  We affirm the judgment of the District Court.

¶3      We restate the issues on appeal as follows:

¶4      1.  Did the District Court err by not informing Johnson that his judgment of June 28, 1996, was amended on July 2, 1997, to include a restitution amount?

¶5      2.  Did the District Court err by not scheduling a hearing in response to Johnson's petition to adjust restitution payment?

¶6      3. Did the District Court err when it denied Johnson's petition to adjust restitution payment?

2

¶7    4. Did the District Court err when it denied Johnson's motion for summary judgment?

**FACTUAL BACKGROUND**

¶8    On January 10, 1996, Samuel Scott Johnson pled guilty to aggravated kidnapping, a felony, in violation of § 45-5-303, MCA (1993), and sexual intercourse without consent, a felony, in violation of § 45-5-503, MCA (1993). On June 28, 1996, the District Court sentenced Johnson to ten years in the Montana State Prison for aggravated kidnapping, and forty years in the Montana State Prison for sexual intercourse without consent. It was ordered that the sentences be served concurrently.

¶9    Pursuant to §§ 53-9-132, -133, MCA (1995), the District Court ordered Johnson to pay restitution for the victim's medical and counseling expenses when released on parole. On July 2, 1997, the District Court's judgment was amended to include the costs of restitution incurred by the victim. The District Court ordered that Johnson pay $2,512.50 as restitution. That amount had already been paid to the victim by the Crime Victim Compensation Program (CVCP), a division of the Department of Justice's Board of Crime Control.

¶10    In April of 2000, Johnson began working in the telemarketing sales division of the Montana Correctional Enterprises Prison Industries Enhancement Certified Program (PIECP) at the Crossroads Correctional Center in Shelby, Montana. In May and June of 2001, Johnson wrote two letters to the CVCP, in which he inquired about the balance of his restitution obligation. Johnson noted that fifteen percent of his net earnings at Crossroads were contributed into the Crime Victim Compensation and Assistance Account (CVCAA), and requested that these monies be credited against his restitution debt. The CVCP denied

3

Johnson's request, and informed him that all funds received from PIECP are deposited by the CVCP in a lump sum without regard to the source, and do not reduce the restitution owed by any individual inmate. The CVCP advised Johnson that all inmates working in PIECP must donate a portion of their salaries to the CVCAA, regardless of whether or not they owe restitution, and that restitution and donations are two wholly separate obligations.

¶11 On July 26, 2001, Johnson filed a petition to adjust restitution payment with the District Court pursuant to § 46-18-246, MCA (1999). The petition requested that: (1) the DOC, the Montana Board of Crime Control, PIECP, and the CVCAA credit all monies paid by Johnson into the CVCAA against the balance of his restitution obligation; (2) the court order the above agencies to cease depositing a portion of Johnson's wages into the CVCAA; (3) the court order that all payroll deductions currently collected by the DOC for Johnson's per diem room and board be applied toward his restitution obligation; and (4) the court respond to the following question: Is the forty-five percent of gross income before payroll deductions charged to Johnson for per diem room and board costs of incarceration consistent with the twenty-five percent of gross income after deductions charged to inmates assigned to pre-release centers?

¶12 On October 5, 2001, Johnson filed a motion for summary judgment pursuant to Rule 56, M.R.Civ.P. Johnson asserted that based on Rule 2(b) of the Montana Uniform District Court Rules, the State's failure to timely respond to his petition to adjust restitution payment required that the court deem the petition granted. The District Court issued its Order and

4

Memorandum on December 4, 2001, in which it denied both Johnson's petition to adjust restitution payment and his motion for summary judgment.

## STANDARD OF REVIEW

¶13 The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co., Inc.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686. Our review of a district court's grant or denial of a motion for summary judgment is *de novo*. *See Casiano v. Greenway Enterprises, Inc.*, 2002 MT 93, ¶ 13, 309 Mont. 358, ¶ 13, 47 P.3d 432, ¶ 13. Therefore, we apply the same Rule 56, M.R.Civ.P., criteria as applied by the district court. *See Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. Pursuant to Rule 56, M.R.Civ.P.:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Bruner*, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).

## DISCUSSION

## ISSUE 1

¶14 Did the District Court err by not informing Johnson that his judgment of June 28, 1996, was amended on July 2, 1997, to include a restitution amount?

¶15 On appeal, Johnson asserts that the District Court erred by not informing him that his judgment of June 28, 1996, was amended to include a restitution amount on July 2, 1997. In

5

the District Court's original judgment, Johnson was ordered to pay restitution for the victim's medical and counseling expenses when released on parole. In response to a motion by the State, the District Court amended its judgment on July 2, 1997, to reflect actual expenses incurred by the victim in the amount of $2,512.50.

¶16    Johnson alleges that he had no knowledge of the motion to amend, and therefore had no opportunity to contest the restitution amount or the intended use of any expenditure. However, Johnson did not bring this allegation before the District Court in his original petition to adjust restitution payment. Therefore, Johnson raises this issue for the first time on appeal. It is well stated that we will not address issues raised for the first time on appeal. *See State v. Kober*, 1999 MT 264, ¶ 11, 296 Mont. 425, ¶ 11, 989 P.2d 399, ¶ 11. Therefore, we decline to address Johnson's allegations that he was without knowledge of the District Court's amended judgment.

## ISSUE 2

¶17    Did the District Court err by not scheduling a hearing in response to Johnson's petition to adjust restitution payment?

¶18    Johnson maintains that the District Court erred by not scheduling a hearing in response to his petition to adjust restitution payment, pursuant to § 46-18-246, MCA (1999). Section 46-18-246, MCA (1999), provides that "an offender may at any time petition the sentencing court to adjust or otherwise waive payment of any part of any ordered restitution." Upon such petition, § 46-18-246, MCA (1999), further mandates that "the court shall schedule a hearing and give a victim to whom restitution was ordered notice of the hearing

6

date, place, and time and inform the victim that the victim will have an opportunity to be heard." Johnson claims that there is no indication that such a hearing was scheduled, or that an attempt to contact the victim was undertaken. Johnson further contends that in the absence of such a hearing, the District Court could not make an informed judgment about the amount of restitution owed.

¶19    We take notice of two important procedural facts regarding Johnson's above contention. First, Johnson did not request a hearing in his original petition to adjust restitution payment. Nor did he complain to the District Court about its failure to hold a hearing. Johnson raises this issue for the first time on appeal. *See Kober*, ¶ 11. Secondly, we note that Johnson moved for summary judgment on the basis that there were no remaining material facts in dispute. By doing so he conceded that there were no factual issues to resolve. Therefore, we decline to address Johnson's contentions regarding the hearing requirement of § 46-18-246, MCA (1999).

## ISSUE 3

¶20    Did the District Court err when it denied Johnson's petition to adjust restitution payment?

¶21    In his petition to adjust restitution payment, Johnson raised four questions with regard to the restitution he was ordered to pay by the District Court, and the fact that no portion of his salary from the Crossroads program has been applied toward that restitution obligation. As part of his argument, Johnson also requested that the DOC credit all money collected for his per diem room and board toward the balance of his restitution obligation. The State

countered that the DOC's application of Johnson's salary is consistent with what is required by relevant statutory authority.

¶22    Johnson's first contention is that all amounts paid by him, to date, into the CVCAA should be credited against the balance of his restitution obligation. Johnson cites § 53-9-132(1), MCA (1999), in support of this position. Section 53-9-132(1), MCA (1999), provides, in pertinent part:

> If a claimant seeks compensation under this part and compensation is awarded, the division is entitled to full subrogation against a judgment or recovery received by the claimant against the offender or a collateral source arising from the criminally injurious conduct committed by the offender for all compensation paid under this part.

Johnson asserts that the money currently deducted from his salary for deposit into the CVCAA is similar to the CVCP's receipt of a judgment, and as such, should be applied to his restitution obligation to prevent a double recovery on the part of the CVCP.

¶23    Johnson's reliance on § 53-9-132(1), MCA (1999), is misplaced. The Crime Victim Compensation Act at §§ 53-9-101 through -133, MCA (1999), provides methods by which a victim may obtain compensation for documented injuries. It provides that a victim may obtain compensation before a restitution obligation is ever imposed on his or her offender. If an offender's restitution obligation is established, the CVCP is subrogated, to the extent of its payment to the victim, to the rights of the victim to any restitution payments. That is, § 53-9-132, MCA (1999), was enacted to allow full subrogation to the CVCP, in the event that the *victim* of a crime is entitled to recover from an offender. There is no provision that would reduce the offender's obligation because of his separate obligation to contribute to the

CVCAA. Therefore, the right of subrogation provided in § 53-9-132, MCA (1999), is not affected by those contributions.

¶24 Secondly, Johnson alleges that the District Court should order the DOC to cease deducting any portion of his salary for deposit into the CVCAA. The State maintains, and the District Court concluded, that there is clear and unambiguous statutory authority which requires that inmates in Montana contribute to the CVCAA.

¶25 For example, § 53-30-132(8), MCA, requires that "able-bodied persons committed to a state prison as adult offenders must be required to perform work as provided for by the department of corrections, including the manufacture of products or the rendering of services." Johnson is employed in the Crossroads program, and is in compliance with § 53-30-132(8), MCA. Subsection (1)(o) of this provision authorizes the DOC to:

> Collect 15% of the net wages paid to an inmate employed in a federally certified prison industries program for transfer to the crime victims compensation and assistance program in the department of justice for deposit in the state general fund as provided in Title 53, chapter 9, part 1.

¶26 Furthermore, the provisions of § 53-30-132(1)(o), MCA, are independent of any individual inmate's obligation to pay restitution to the CVCP. The Montana Legislature chose, in § 53-30-132(1)(o), MCA, to fund the CVCP by deducting fifteen percent of inmate wages for deposit into the CVCAA. The District Court declined to interfere with this legislative method of funding the CVCP. Absent authority, so do we. We conclude that the deductions authorized in § 53-30-132(1)(o), MCA, apply to all inmates employed pursuant to § 53-30-132(8), MCA, regardless of any restitution obligation. The wages deducted from Johnson's salary at Crossroads, and deposited into the CVCAA, are a completely separate

9

matter from the $2,512.50 Johnson owes the CVCP as restitution upon his release on parole. Therefore, no deposit made by Johnson into the CVCAA should be credited toward the balance of his restitution obligation. Accordingly, we hold that pursuant to § 53-30-132(1)(o), MCA, it is permissible for the DOC to deduct a portion of Johnson's salary for deposit to the CVCAA.

¶27 The third allegation contained in Johnson's petition to adjust restitution payment concerns the money deducted by the DOC for per diem room and board. Johnson requests that all deductions currently taken from his salary by the DOC for room and board be applied toward the balance of his restitution debt. He further alleges that the District Court erred when it neglected to address this issue in its judgment.

¶28 Johnson relies on § 46-18-237, MCA, which provides that if the DOC becomes aware that an inmate is entitled to receive money from "any source," the inmate's supervising authority may follow the outlined procedure in order to garnish that money and apply it to the inmate's outstanding debts. *See* § 46-18-237, MCA. Pursuant to § 46-18-237(3), MCA, the garnished money is first applied to an outstanding restitution obligation, before any child support or per diem debts are satisfied. Johnson contends that the DOC must follow this garnishment procedure with regard to his salary at Crossroads, because it is money received from "any source." However, § 46-18-237, MCA, places no limitations on the type of deductions which the DOC can take from inmate salaries. Instead, § 53-30-132, MCA, specifically addresses the allowable DOC deductions, including deductions for an inmate's per diem room and board.

¶29    Section 53-30-132(1)(p), MCA, provides that: "The department of corrections may collect from an inmate employed in a federally certified prison industries program charges for room and board consistent with charges established by the director for inmates assigned to prerelease centers." This section expressly addresses the type of deductions which are permitted by the DOC, and these include deductions for an inmate's room and board. There is no language in § 53-30-132(1)(p), MCA, which indicates that the DOC must first go through the garnishment process of § 46-18-237, MCA, in order to make such deductions. We note that the general rule announced in both statutory and case law is that "a specific statute controls over a more general statute." *Redies v. Cosner*, 2002 MT 86, ¶ 19, 309 Mont. 315, ¶ 19, 48 P.3d 697, ¶ 19; *and* § 1-2-102, MCA. Therefore, § 53-30-132(1)(p), MCA, is the controlling statute regarding DOC deductions for per diem room and board. The DOC is authorized to deduct a portion of Johnson's salary for costs of room and board pursuant to § 53-30-132(1)(p), MCA, without aid of the garnishment procedure in § 46-18-237, MCA. Accordingly, we hold that the District Court's failure to address this issue was harmless error.

¶30    Finally, Johnson questions the consistency between deductions taken from his own salary for room and board, and those taken from inmates at pre-release centers. Johnson contends that the District Court erred when it failed to address this issue. However, we also decline to reach this issue. Johnson cites no authority to support his argument, and this Court does not have sufficient information before it with which to consider the DOC's compliance with the statutes regarding room and board deductions. We have repeatedly held that "we

11

will not consider unsupported issues or arguments." *In re Custody of Krause*, 2001 MT 37, ¶ 32, 304 Mont. 202, ¶ 32, 19 P.3d 811, ¶ 32. It is "not this Court's obligation to locate authorities or formulate arguments for a party in support of positions taken on appeal." *In re B.P.*, 2001 MT 219, ¶ 41, 306 Mont. 430, ¶ 41, 35 P.3d 291, ¶ 41. Therefore, we affirm the District Court's refusal to address this issue.

¶31 On appeal, Johnson asserts one final argument regarding restitution in his reply brief that did not appear in either his original petition to adjust restitution payment or his opening brief. Rule 23(c), M.R.App.P., requires that the reply brief be "confined to new matter raised in the brief of the respondent." Johnson's new argument is clearly not in compliance with Rule 23(c), M.R.App.P., as the State advanced no such argument in its responsive brief. Accordingly, we decline to address the argument raised by Johnson in his reply brief.

**ISSUE 4**

¶32 Did the District Court err when it denied Johnson's motion for summary judgment?

¶33 Johnson filed a motion for summary judgment with the District Court pursuant to Rule 56, M.R.Civ.P. Johnson's motion asserted that the State failed to respond to his petition to adjust restitution payment within ten days, and that, therefore, the District Court was required to grant the petition pursuant to Rule 2(b) of the Uniform District Court Rules. Rule 2(b) provides, in relevant part, that: "[f]ailure to file an answer brief by the adverse party within ten days shall be deemed an admission that the motion is well taken." On appeal, Johnson maintains that pursuant to Rule 2(b) of the Uniform District Court Rules, the District Court erred when it denied his motion for summary judgment.

¶34 The District Court denied Johnson's summary judgment motion based upon our decision in *Cole v. Flathead County* (1989), 236 Mont. 412, 771 P.2d 97. In *Cole*, we held that motions for summary judgment had to be decided pursuant to Rule 56, M.R.Civ.P., even if local rules would require a different result. *Cole*, 236 Mont. at 417, 771 P.2d at 100. Pursuant to Rule 56, M.R.Civ.P., the question is always whether there are questions of fact or whether the moving party is entitled to judgment as a matter of law. *Cole*, 236 Mont. at 415-16, 771 P.2d at 99-100. Accordingly, we hold that pursuant to Rule 56 of the Montana Rules of Civil Procedure, the District Court correctly denied Johnson's motion for summary judgment.

¶35 For the foregoing reasons, the judgment of the District Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM REGNIER